**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ELECTRONIC FRONTIER FOUNDATION,
　　　　　*Plaintiff-Appellee,*

　　　　　v.

OFFICE OF THE DIRECTOR OF
NATIONAL INTELLIGENCE;
DEPARTMENT OF JUSTICE,
　　　　　*Defendants-Appellants.*

No. 09-17235

D.C. Nos.
3:08-cv-01023-JSW
3:08-cv-02997-JSW

ORDER
AMENDING
OPINION AND
AMENDED
OPINION

Appeal from the United States District Court
for the Northern District of California
Jeffrey S. White, District Judge, Presiding

Argued and Submitted
January 12, 2010—San Francisco, California

Filed February 9, 2010
Amended April 9, 2010

Before: Myron H. Bright,* Michael Daly Hawkins, and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Hawkins

---

*The Honorable Myron H. Bright, Senior United States Circuit Judge
for the Eighth Circuit, sitting by designation.

5357

**COUNSEL**

Douglas N. Letter and Scott McIntosh, United States Department of Justice, Civil Division, Washington, D.C., for the defendants-appellants.

Marcia Hofmann, San Francisco, California, for the plaintiff-appellee.

**ORDER**

The Motion by Appellants to Correct Factual Misstatement in Panel Opinion is GRANTED. The Opinion filed on February 9, 2010, slip op. page 2313, and appearing at 595 F.3d 949 (9th Cir. 2010), is hereby amended as follows:

We delete the sentence on page 962 that currently reads:

On appeal, defendants concede that subsequent to the district court order, the government determined the district court was correct to order disclosure of the documents exchanged between the Executive Branch and Congress, as well as those in which the telecommunications firms were involved in the exchange.

In its place, we substitute the following sentence:

After the district court's disclosure order, the Solicitor General chose not to appeal the Exemption 5 ruling as it pertained to the documents exchanged between the Executive Branch and Congress, as well as those documents in which the telecommunications firms were involved in the exchange.

No petitions for rehearing or petitions for rehearing en banc will be entertained following the filing of this Order.

---

## OPINION

HAWKINS, Circuit Judge:

In the wake of the September 11, 2001 terrorist attacks, the President authorized the National Security Agency ("NSA") to conduct a warrantless, electronic surveillance program on millions of American telephones. Numerous lawsuits have claimed the program was illegal and unconstitutional, *e.g.*, *Al-Haramain Islamic Foundation, Inc. v. Bush*, 507 F.3d 1190, 1192-93 (9th Cir. 2007), including a consolidated action for damages against allegedly cooperating telecommunications providers, *see In re NSA Telecomms. Records Litig.*, 633 F. Supp. 2d 949, 959 (N.D. Cal. 2009); *see also* U.S. Dep't of Justice, Office of Inspector Gen., A Review of the Federal Bureau of Investigation's Use of Exigent Letters and Other Informal Requests for Telephone Records 20-25 (Jan. 2010) (describing three unnamed telecommunications carriers' cooperation with the FBI). The merits of those claims, however, are not at issue here.

This case concerns the discussions between telecommunications carriers (including their lobbyists and attorneys) and the government, as the carriers sought retroactive liability protection for any participation in the program. This appeal concerns the extent to which the public has the right to infor-

mation about those discussions and related lobbying efforts under the Freedom of Information Act ("FOIA").

## I.  BACKGROUND

### A.  Enactment of the Foreign Intelligence Surveillance Act Amendments

Efforts to provide liability protection for the providers began in 2007. In April of that year, as part of a broader discussion of reforming electronic surveillance laws, the Department of Justice ("DOJ") sent a legislative proposal to Congress, which included a provision creating retroactive immunity for telecommunications providers alleged to have participated in the surveillance activities. In August 2007, Congress enacted the Protect America Act of 2007 ("PAA"), Pub. L. No. 110-55, 121 Stat. 552, a temporary measure, which did not include a liability shield.

Contemporaneously with the PAA debate, news organizations such as *The New York Times* and *Newsweek* reported on a "campaign" involving "some of Washington's most prominent lobbying and law firms"[1] to pressure the Bush adminis-

---

[1] The *Newsweek* article included the following:

> Among those coordinating the industry's effort are two well-connected capital players who both worked for President George H.W. Bush: Verizon general counsel William Barr, who served as attorney general under 41, and AT&T senior executive vice president James Cicconi, who was the elder Bush's deputy chief of staff.

> Working with them are a battery of major D.C. lobbyists and lawyers who are providing "strategic advice" to the companies on the issue, according to sources familiar with the campaign who asked not to be identified talking about it. Among the players, these sources said: powerhouse Republican lobbyists Charlie Black and Wayne Berman (who represent AT&T and Verizon, respectively), former GOP senator and U.S. ambassador to Germany Dan Coats (a lawyer at King & Spaulding who is represent-

tration to "quickly approve a measure wiping out all private lawsuits against them for assisting" with the warrantless surveillance program. The news accounts highlighted the providers' "hidden role in the political battle," and *Newsweek* claimed Director of National Intelligence Mike McConnell ("McConnell") had "raise[d] the stakes," stating in a recent interview that the lawsuits could "bankrupt these companies."

Congress designed the PAA as a stopgap, and allowed it to expire on February 16, 2008. One day before the PAA's expiration, McConnell discussed the need for statutory protection for the carriers, stating in a TV interview, "The companies are telling us if you can't protect us, the cooperation you need is not going to be there." On February 23, DOJ and the Office of the Director of National Intelligence ("ODNI") issued a joint press release noting the "private partners are cooperating for the time being," but the government also expressed concern because the carriers "have indicated that they may well discontinue cooperation if the uncertainty [over their liability exposure] persists." News reports claimed AT&T in fact stopped cooperating with the government for six days after the expiration of the PAA. Similar reports indicated Verizon expressed its concerns to the government but did not cease its assistance.

In July 2008, Congress passed, and the President signed, the Foreign Intelligence Surveillance Act of 1978 Amendments Act of 2008 ("FISA Amendments Act"), Pub. L. No. 110-261, 122 Stat. 2436, updating FISA on a more permanent basis than did the PAA. As their lobbyists had sought, the legislation included a liability shield for the carriers. Under Title

---

ing Sprint), former Democratic Party strategist and one-time assistant secretary of State Tom Donilon (who represents Verizon), former deputy attorney general Jamie Gorelick (whose law firm also represents Verizon) and Brad Berenson, a former assistant White House counsel under President George W. Bush who now represents AT&T.

VIII of the Act, section 802, "Procedures for Implementing Statutory Defenses," established the immunity procedure.

Specifically, section 802 provided that "a civil action may not lie or be maintained in a Federal or State court against any person for providing assistance to an element of the intelligence community, and shall be promptly dismissed," so long as the Attorney General certified either that a defendant provided assistance pursuant to a number of reasons, such as court order or presidential authorization, see § 802(a)(1)-(4), 122 Stat. at 2468-69, or certified that "the person did *not* provide the alleged assistance," *id.* § 802(a)(5) (emphasis added).

## B.   EFF's FOIA Requests

After passage of the PAA but before enactment of the FISA Amendments Act, the Electronic Frontier Foundation ("EFF") made a FOIA request to ODNI and five DOJ components (together "Defendants" or "the government"),[2] seeking all records from September 1, 2007, through December 21, 2007, concerning "briefing, discussions, or other exchanges" agency officials had with 1) members of Congress, and "2) representatives or agents of telecommunications companies concerning amendments to FISA, including any discussion of immunizing telecommunications companies or holding them otherwise unaccountable for their role in government surveillance activities." *Elec. Frontier Found. v. Office of the Dir. of Nat'l Intelligence*, 542 F. Supp. 2d 1181, 1184 (N.D. Cal. 2008) ("*EFF*").

Some four months later, EFF submitted a second round of FOIA requests to the same agencies seeking "all agency records" concerning briefings, discussions, or other exchanges

---

[2]The five DOJ components were the Office of the Attorney General ("OAG"), the Office of Legislative Affairs ("OLA"), the Office of Legal Policy ("OLP"), the Office of Legal Counsel ("OLC"), and DOJ's National Security Division ("NSD").

between the agencies and "representatives or agents of tele-communications companies concerning amendments to FISA," or shielding the companies from liability as a result of their cooperation with government surveillance activities. This round of FOIA requests also sought information regarding communications from the agencies to members of Congress or their staffs, as well as agency communications, regardless of subject matter, with a number of named, high-profile telecommunications industry employees and lobbyists.[3]

In both FOIA letters, EFF sought expedited processing of their requests. *See* 5 U.S.C. § 552(a)(6)(E)(v)(II) (2000), 32 C.F.R. § 1700.12(c)(2) (2007), and 28 C.F.R. § 16.5(d)(1)(ii). When the agencies failed to timely respond, EFF filed two separate actions, which were later consolidated by the district court.

---

[3]EFF's specific FOIA request sought all records:

A. from December 21, 2007 to the present concerning briefs, discussions, or other exchanges, any [agency] official has had with representatives or agents of telecommunications companies concerning amendments to FISA, including any discussion of immunizing telecommunications companies or holding them otherwise unaccountable for their role in government surveillance activities;

B. from December 21, 2007 to the present concerning briefings, discussions, or other communications from any OAG official to any member of the Senate or House of Representatives or their staffs;

C. from December 21, 2007 to the present concerning *any* communications, discussions, or other exchanges regardless of subject that any [agency] official has had with Charlie Black, Wayne Berman, Dan Coats, Tom Donilon, Jamie Gorelick or Brad Berenson; and

D. from January 1, 2007 to the present that are responsive to the categories above, and have not yet been produced in response to previous EFF FOIA requests.

## C.   Procedural History

On April 4, 2008, the district court granted a preliminary injunction requiring ODNI and DOJ to expedite processing of EFF's December 2007 FOIA requests. *EFF*, 542 F. Supp. 2d at 1187. The parties negotiated a schedule for processing the June 2008 requests.

In response to the preliminary injunction, ODNI and DOJ released many documents, but withheld others pursuant to a number of FOIA exemptions and privileges. Under Exemption 5 (protecting "inter-agency or intra-agency" documents privileged in civil litigation, 5 U.S.C. § 552(b)(5) (2006)), Defendants withheld email messages and other information exchanged between the agencies and Congress, the agencies and the telecommunications carriers, and the agencies and other parts of the Executive Branch, including the White House.

Defendants also withheld the identities of telecommunications company representatives under Exemption 3 (permitting the withholding of information "specifically exempted from disclosure by statute," 5 U.S.C. § 552(b)(3)), and Exemption 6 (permitting withholding of certain personnel, medical, and similar files for which disclosure "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6)).

EFF challenged withholdings related to unclassified communications between and among Executive agencies, Congress, the White House, and telecommunications carriers, concerning amendments to FISA. It also challenged Defendants' withholding of the identities of individual agents or representatives of the carriers within both the released and withheld communications. The parties each moved for summary judgment, which they agreed to consolidate, and the district court denied the government's motion, granted EFF's

cross-motion, and ordered the government to disclose the contested documents.

After the district court rejected Defendants' motions for reconsideration and refused a temporary stay pending the Solicitor General's determination regarding appeal of the disclosure order, Defendants sought the stay in this court. We granted a stay pending appeal to allow the Solicitor General the opportunity to decide which part(s) of the summary judgment order to appeal.

Defendants decided not to appeal the district court order as it pertained to information Defendants exchanged with Congress and with the telecommunications firms, and the government then disclosed the content of all communications between the agencies and Congress and the agencies and telecommunications carriers, though redacted the identities of telecommunications firms and their agents or representatives. This substantial disclosure left only two types of information Defendants continue to withhold.

Under Exemption 5, Defendants are withholding materials claimed to have been circulated solely within the Executive Branch. Defendants also continue to withhold the previously redacted identities of telecommunications firms and their agents or representatives involved in the FISA Amendments Act communications under Exemption 3 and Exemption 6.

## II. DISCUSSION

### A. Standard of Review under FOIA

**[1]** FOIA was enacted to create a "judicially enforceable public right to secure" government documents. *EPA v. Mink*, 410 U.S. 73, 80 (1973); *see also U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991) (FOIA "was enacted to facilitate public access to Government documents."). The statutory scheme provides public access to government information

"shielded unnecessarily" from the public and establishes a "judicially enforceable public right to secure such information from possibly unwilling official hands." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976) (internal quotation marks omitted). FOIA's purpose was thus to "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (internal quotation marks omitted).

**[2]** "At the same time, FOIA contemplates that some information may legitimately be kept from the public." *Lahr v. NTSB*, 569 F.3d 964, 973 (9th Cir. 2009). The statute contains nine exemptions, pursuant to which the government can withhold information otherwise available for disclosure. *See* 5 U.S.C. § 552(b)(1)-(9) (2006). "FOIA's 'strong presumption in favor of disclosure' means that an agency that invokes one of the statutory exemptions to justify the withholding of any requested documents or portions of documents bears the burden of demonstrating that the exemption properly applies to the documents." *Lahr*, 569 F.3d at 973 (quoting *Ray*, 502 U.S. at 173). Because of its overarching goal of public disclosure, FOIA "exemptions are to be interpreted narrowly." *Id.*

On summary judgment, we employ a two-step standard of review in FOIA cases. *Lion Raisins Inc. v. U.S. Dep't of Agric.*, 354 F.3d 1072, 1078 (9th Cir. 2004). First, whether, de novo, "an adequate factual basis exists to support the district court's decisions." *Milner v. U.S. Dep't of the Navy*, 575 F.3d 959, 963 (9th Cir. 2009). If so, " 'then we review the district court's conclusions of fact for clear error, while legal rulings, including its decision that a particular exemption applies, are reviewed de novo.' " *Id.* (quoting *Lane v. Dep't of Interior*, 523 F.3d 1128, 1135 (9th Cir. 2008)). The burden rests on the government to justify its decision to exclude disclosures under FOIA. *U.S. Dep't of Justice v. Reporters*

*Comm. for Freedom of the Press*, 489 U.S. 749, 755 (1989)
("*Reporters Comm.*").

## B.  Information on Carriers' and their Agents' Lobbying Communications

### 1.  FOIA Exemption 3

The government argues it is entitled to withhold the names of the participating carriers and their agents pursuant to FOIA Exemption 3. Due to confusion evident in the parties' cross-motions for summary judgment, the district court did not squarely address the factual or legal basis of the government's Exemption 3 argument.

**[3]** FOIA Exemption 3 allows a responding agency to withhold information "specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3). The government argues two statutes justify its withholdings: First, Section 103(c)(7) of the National Security Act of 1947, obligating the Director of National Intelligence to "protect intelligence sources and methods from unauthorized disclosure," 50 U.S.C. § 403-1(i)(1) (2006); *see also CIA v. Sims*, 471 U.S. 159, 178-79 (1985); and second, Section 6 of the National Security Agency Act of 1959, which prevents "disclosure of the organization or any function of the National Security Agency, or any information with respect to the activities thereof, or of the names, titles, salaries, or number of persons employed by such agency," Pub. L. No. 86-36, 73 Stat. 63, codified at 50 U.S.C. § 402 note.

Under these statutes and Exemption 3, the government's summary judgment brief argued, "ODNI and DOJ withheld information that could reveal whether any particular telecommunications carrier has assisted, or may in the future assist, the government with intelligence activities." The government claimed disclosure "could deter telecommunications companies from assisting the government in the future," and disclo-

sure "provides our adversaries with valuable information about our intelligence sources, methods, and capabilities."

**[4]** The government's argument was predicated on the following inference: Revealing the identity of carriers and their agents working for a carrier liability shield would allow foreign intelligence agents to determine contours of NSA intelligence operations, sources, and methods. In other words, knowledge of which firms were and were not lobbying for liability protection could lead to inferences regarding the firms that participate in the surveillance program. EFF disputes the propriety of this inference. However, because the district court did not address Exemption 3 due to confusion in the parties' summary judgment briefing, we remand for the district court to address these claims in the first instance. *See Pac. Fisheries, Inc. v. United States*, 539 F.3d 1143, 1147 (9th Cir. 2008).

EFF's motion opposing the government's summary judgment motion is likely the source of the district court's confusion. The government relied on the following statement from EFF's motion in claiming EFF abandoned its objection to the government's withholding the names of telecommunications firms and agents under Exemption 3: "EFF has decided not to challenge . . . the withholding of any material under Exemptions 1, 2, 3, or 7(E)." The district court, in passing, mentioned this same statement from EFF's motion in failing to discuss Exemption 3 in its summary judgment ruling.

Although EFF's statement seems to abandon its Exemption 3 challenge, other language contradicts such a conclusion. For example, the sentence quoted above ended in a footnote, which included the following: "In some cases, the government claims Exemptions 1 and/or 3 in conjunction with Exemptions 5 and/or 6. EFF continues to challenge the Exemption 5 and 6 withholdings to the extent the records can be disclosed without revealing classified information or the government's intelligence sources and methods." In the same

paragraph with the confusing sentence, EFF went on to claim, "as a result of EFF's efforts to narrow the scope of the litigation, the only material still at issue relates to unclassified communications between and among executive agencies, Congress, the White House, and telecommunications companies concerning amendments to FISA, and the identities of individual agents or representatives of the carriers within those communications."

The government's reply to EFF claimed EFF had "clearly abandoned its challenge of Exemption 3 withholdings," and the government did not discuss the merits of whether releasing names of telecommunications firms and their agents was adequately withheld under Exemption 3.

EFF countered, claiming the government's arguments under Exemption 3 were "coextensive" with the Exemption 6 arguments. EFF explained, "[a]s noted in EFF's opening brief, despite not challenging Exemption 3 directly, 'EFF continues to challenge the Exemption 5 and 6 withholdings to the extent that records can be disclosed without revealing classified information or the government's intelligence sources and methods.'" It continued, "[t]he identities of the individuals contacting the government would reveal neither classified information nor the government's intelligence sources and methods." The parties thus placed the district court in the difficult position of determining, over disputed claims, whether Exemption 3 claims were actually at issue.

The district court seemed to accept the government's assertion that EFF abandoned its Exemption 3 challenge, but, then, when it found the government could not withhold the same documents under Exemption 6, it ordered them released without considering the documents for which the government also claimed Exemption 3. Assuming the district court found EFF abandoned its Exemption 3 arguments, these would appear to be validly withheld documents under the government's supposedly unchallenged Exemption 3 claim.

A single valid exemption is sufficient to support withhold-ing. *See Milner*, 575 F.3d at 971 n.8; *Painting Indus. of Haw. Mkt. Recovery Fund v. U.S. Dep't of Air Force*, 26 F.3d 1479, 1486 (9th Cir. 1994). Therefore, if the district court found EFF had abandoned its argument against Exemption 3 with-holding, the documents the government withheld pursuant to Exemption 3 should not have been ordered released. If the district court found EFF was actually challenging whether releasing the names of telecommunications firms and their agents constituted an unauthorized disclosure of intelligence sources and methods, it should have undertaken that analysis.

**[5]** Based on the nature of EFF's challenge, we take the latter position. Because the district court did not review the governments' arguments pursuant to Exemption 3, we remand for it to conduct the Exemption 3 review. *See Pac. Fisheries, Inc.*, 539 F.3d at 1147. A remand is particularly appropriate because our two-step review of FOIA determinations presup-poses the district court has determined a contested issue. *See Milner*, 575 F.3d at 963; *Berman v. CIA*, 501 F.3d 1136, 1139-40 (9th Cir. 2007).

The record indicates EFF never conceded its challenge to withholding the names of the carriers and their agents despite its statement it was abandoning its Exemption 3 challenge. Thus, finding EFF did relinquish this challenge, and deciding the issue solely under Exemption 6, would not be an accurate reading of EFF's arguments as a whole, nor is it reason to reject out-of-hand all challenges to the government's with-holding of the carriers' and agents' identities.

The government claims that releasing identities of firms and individuals working for a carrier liability shield will create an inference of the government's sources of intelli-gence. Determining whether this claim is meritorious may require factual determinations, and it also may require—though it may not—the reviewing court to view the disputed documents *in camera* as opposed to simply relying on the

*Vaughn* indices currently in the record. Further, our well-established procedure for reviewing FOIA exemption determinations is not perfectly applicable where, as here, the district court did not make an actual determination. *See Milner*, 575 F.3d at 963; *Berman*, 501 F.3d at 1139-40.

**[6]** For the foregoing reasons, we vacate and remand the district court's Exemption 3 analysis, to the extent one exists, for the district court to address whether the government properly withheld telecommunications firms' and their agents' identities pursuant to FOIA Exemption 3.

## 2.   FOIA Exemption 6

Defendants also claim they are entitled to withhold the names of the telecommunications carriers and their agents pursuant to Exemption 6 to protect the agents' personal privacy. Because satisfying a single FOIA exemption is all the government must show to withhold a given piece of information, *see Berman*, 501 F.3d at 1141 n.2, we must also reach the Exemption 6 issue.

The district court found the "public interest in an informed citizenry" outweighed the carriers' agents' "not substantial" privacy interests. For the reasons explained below, we affirm the district court on the Exemption 6 summary judgment grant for EFF.

**[7]** Exemption 6 removes "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy" from FOIA's disclosure requirements. 5 U.S.C. § 552(b)(6). In considering whether Exemption 6 applies to a particular request for information, we must consider, first, whether the information is contained in a personnel, medical, or "similar" file, and, second, "whether release of the information would constitute a clearly unwarranted invasion of the person's privacy." *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982)

(finding citizenship status properly withheld under Exemption 6). In conducting this second inquiry, we balance the individual's privacy interest against "the extent to which FOIA's central purpose of opening agency action to public scrutiny would be served by disclosure." *U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 491 (1994); *see Lahr*, 569 F.3d at 973 (A court "must balance the privacy interest protected by the exemptions against the public interest in government openness that would be served by disclosure.").

The first question is thus whether communications documented in the records in question constitute "similar" information as that contained in personnel and medical files under Exemption 6. As the government points out, EFF does not contest whether the emails are "similar files." Though this may be a closer question than the government describes, we assume without deciding that the documents at issue here qualify as "similar files." *See Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 33 (D.C. Cir. 2002) (assuming without deciding that the documents in question were similar files because invasion of privacy question was dispositive and more straightforward).

**[8]** We next consider "whether release of the information would constitute a clearly unwarranted invasion of that person's privacy." *Wash. Post Co.*, 456 U.S. at 602. "[T]o determine whether a record is properly withheld, we must balance the privacy interest protected by the exemptions against the public interest in government openness that would be served by disclosure." *Lahr*, 569 F.3d at 973.

The district court concluded "that there is some, although not a substantial, privacy interest in the withheld documents indicating the identities of the private individuals and entities who communicated with the ODNI and DOJ in connection with the FISA amendments." It found, however, "that the public interest in an informed citizenry weighs in favor of disclosure" because "there is a strong public interest in disclo-

sure of the identity of the individuals who contacted the government . . . to protect telecommunications companies from legal liability for their role in government surveillance activities." We agree.

[9] Because Exemption 6 cases often involve a dispute over whether to redact a government employee's name, or a record of an individual in a large government database, there is little authority on the privacy interest under Exemption 6 when a private individual voluntarily seeks to engage with and persuade the government on a policy position. However, as described below, the few cases considering a private party attempting to influence government policy typically find in favor of disclosure, lacking countervailing concerns not present in this case. *See, e.g.*, *Alliance for the Wild Rockies v. Dep't of the Interior*, 53 F. Supp. 2d 32, 36-37 (D.D.C. 1999).

Perhaps the most factually analogous case is *People for the American Way Foundation v. National Park Service*, in which a district court rejected Exemption 6 withholding of the identities of a group urging the National Park Service to alter the video shown at the Lincoln Memorial to remove "photographs and video coverage of demonstrations that occurred at the Lincoln Memorial, including gay rights, pro-choice and anti-Vietnam War footage." 503 F. Supp. 2d 284, 288-89 (D.D.C. 2007). Discussing Exemption 6, the court stated, "[w]hen a citizen petitions his government to take some action, courts have generally declined to find the identity of the citizen to be information that raises privacy concerns under exemption 6." *Id.* at 305-06 (internal quotation marks omitted).

The cases considering this issue largely reason along the same lines. Although some cases have found little public interest in disclosing the name of a constituent writing to a member of Congress, they recognize the obvious distinction between that and the public's interest in knowing which politically active groups affect government decision making. *See id.* (distinguishing constituent letters from more involved

forms of policy influence). *Compare Strout v. U.S. Parole Comm'n*, 40 F.3d 136, 139 (6th Cir. 1994) (finding considerable privacy interest in individuals writing to oppose parole request), *and Kidd v. Dep't of Justice*, 362 F. Supp. 2d 291, 297 (D.D.C. 2005) ("Providing personal identifying information commonly found in constituent letters [to members of Congress] does not advance the purposes of FOIA and, as such, may be withheld from FOIA requests."), *and Voinche v. FBI*, 940 F. Supp. 323, 330 (D.D.C. 1996) ("There is no reason to believe that the public will obtain a better understanding of the workings of various agencies by learning the identities of . . . private citizens who wrote to government officials . . . ."), *with Kurzon v. Dep't of Health & Human Servs.*, 649 F.2d 65, 69-70 (1st Cir.1981) (rejecting government's Exemption 6 argument to withhold names of scientists turned down for research funding, holding that although the "protection of professional reputation, even in this strict sense, is not beyond the purview of exemption 6, it is not at its core"), *and Lardner v. U.S. Dep't of Justice*, No. Civ.A.03-0180(JDB), 2005 WL 758267, at *18 (D.D.C. Mar. 31, 2005) (holding public interest in identifying persons influencing presidential pardon power outweighed modest privacy interest), *and Judicial Watch of Florida, Inc. v. U.S. Dep't of Justice*, 102 F. Supp. 2d 6, 18 (D.D.C. 2000) ("Depriving the public of knowledge of the writer's identity would deprive the public of a fact which could suggest that their Justice Department had been steered by political pressure rather than by the relevant facts and law."), *and Alliance for the Wild Rockies*, 53 F. Supp. 2d at 36-38 (names and addresses of individuals who submitted comments on proposed rulemaking could not be withheld under Exemption 6 because of public interest in disclosure).

Here, we balance the public interest in obtaining information about the effects of lobbying on government decision making against the privacy concerns of telecommunications industry lobbyists in keeping their names and the nature of their employment activities private. Under Exemption 6, our

inquiry is primarily concerned with privacy, here that of the carriers' agents and lobbyists.

**[10]** There is a clear public interest in public knowledge of the methods through which well-connected corporate lobbyists wield their influence. As the Supreme Court has explained, "[o]fficial information that sheds light on an agency's performance of its statutory duties" merits disclosure. *Reporters Comm.*, 489 U.S. at 773.

**[11]** With knowledge of the lobbyists' identities, the public will be able to determine how the Executive Branch used advice from particular individuals and corporations in reaching its own policy decisions. Such information will allow the public to draw inferences comparing the various agents' influence in relation to each other and compared to the agents' or their corporate sponsors' political activity and contributions to either the President or key members of Congress. In short, we find the public interest in "government openness that would be served by disclosure" of how the government makes decisions potentially shielding firms lobbying (and donating to campaigns) from nine-figure liabilities to be plainly important. *See Lahr*, 569 F.3d at 973.

**[12]** The district court also correctly found that lobbyists' privacy interests in the nature of their employment, should not counterbalance the public's strong interest. *See Sims v. CIA*, 642 F.2d 562, 574-75 (D.C. Cir. 1980); *People for the Am. Way Found.*, 503 F. Supp. 2d at 303-07. Putting aside the national security concerns discussed above, as we must under Exemption 6, government acknowledgment of a lobbyist's lobbying activities does not reveal "sensitive personal information" about the individual rising to a "clearly unwarranted invasion of personal privacy." *Judicial Watch, Inc. v. Dep't of Justice*, 365 F.3d 1108, 1126 (D.C. Cir. 2004); *Reed v. NLRB*, 927 F.2d 1249, 1251 (D.C. Cir. 1991). "Official information that sheds light on an agency's performance of its statutory duties falls squarely within [Exemption 6's] statutory pur-

pose." *Reporters Comm.*, 489 U.S. at 773. Unlike situations in which private citizens find themselves in a large government database because of conduct unrelated to the inquiry underlying the FOIA action, when "[t]he applicant is petitioning the government for the performance of a public act; this is not a situation where he is a third-party who finds himself in government records through no action of his own." *Lardner*, 2005 WL 758267 at *17.

**[13]** With regard to the carriers' agents' email addresses, however, the district court did not perform the same careful balancing in which it engaged for the agents' names. As EFF explained, the public interest in disclosing the identities of the lobbyists' names is to shed light on which companies and which individuals influence government decision making. We agree with that rationale, but we find no corresponding interest as to the carriers' agents' email addresses. Yet we can easily envision possible privacy invasions resulting from public disclosure of the email addresses. EFF provides no argument, and we can think of none, countering our conclusion that the email addresses may add to the risk of privacy invasion with little additional benefit to the public interest. *See Forest Serv. Employees for Envtl. Ethics v. U.S. Forest Serv.*, 524 F.3d 1021, 1025 (9th Cir. 2008) ("[I]nformation about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct is not the type of information to which FOIA permits access.") (internal quotation marks omitted).

**[14]** Thus the carriers' agents' email addresses, when not needed to identify the party communicating with the government, are protected from release by Exemption 6. If, however, a particular email address is the *only* way to identify the carriers' agent at issue from the disputed records, such information is not properly withheld under Exemption 6 because this minor privacy interest does not counterbalance the robust interest of citizens' right to know "what their government is

up to." *Reporters Comm.*, 489 U.S. at 773 (internal quotation marks omitted).

**[15]** In short, we affirm the district court's careful balancing of the public interest against the privacy interests of agents for the carriers, finding disclosure of the names of people seeking to influence the agencies' pursuit of a retroactive carrier shield does not constitute "a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6) (2006). However, we reverse the district court as to the agents' email addresses—so long as they are not needed to identify the agent—for which there is little public interest in disclosure and at least some privacy interest.

## C.   Information Excluded Under Exemption 5

The parties also dispute the propriety of the government withholding information, primarily in emails, pursuant to FOIA Exemption 5. Exemption 5 provides that FOIA "does not apply to matters that are . . . inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." *Id.* § 552(b)(5).

In the district court, the government attempted to withhold communications regarding the FISA Amendments between the Executive Branch, Congress, and the telecommunications firms under Exemption 5. As the district court explained, "the bulk of the records at issue consist[ed] of confidential email messages exchanged between ODNI or DOJ official[s] and congressional staff in which the parties to the emails discussed, analyzed and negotiated possible amendments to FISA." The district court found the government had improperly withheld documents under Exemption 5 and ordered the disclosure of all disputed documents, including all "documents exchanged between ODNI and DOJ officials and congressional staff or those documents regarding communica-

tions between representatives of the telecommunications companies and government officials."

Unlike more thorough district court opinions in complicated FOIA cases specifying groups of documents to disclose according to the government's Vaughn indices, *see, e.g.*, *People for the Am. Way Found.*, 503 F. Supp. 2d at 297-304 (analyzing each category of withheld documents in detail), the district court here ordered complete disclosure of all disputed documents without focusing on information in the *Vaughn* indices showing distribution only within the DOJ and ODNI or between the DOJ and the White House.

After the district court's disclosure order, the Solicitor General chose not to appeal the Exemption 5 ruling as it pertained to the documents exchanged between the Executive Branch and Congress, as well as those documents in which the telecommunications firms were involved in the exchange. *See Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). The government thus released these documents per the district court order, redacting information identifying telecommunications firms or their agents pursuant to the Exemption 3 and Exemption 6 issues discussed above. However, the government essentially takes issue with the thoroughness of the district court, noting its broad order includes categories of information from the *Vaughn* indices circulated only within executive agencies and the White House.

EFF focuses on arguments regarding whether the Executive Office of the President is an "agency," and how we should address the privilege claims if we find the district court improperly concluded all documents were not inter-branch or intra-branch communications. Presumably EFF focuses on these arguments because, in passing, it concedes the district court erred in finding all documents at issue were not inter-branch or intra-branch memorandums or letters. EFF notes, "[t]he government argues, and EFF agrees, that communica-

tions within DOJ and ODNI or between Executive Branch agencies satisfy the threshold."

This explanation highlights the district court's error and demonstrates why remand on Exemption 5 is necessary. While a district court's broad rejection of an Exemption 5 withholding is not necessarily problematic, its inquiry should be fact-specific, and, as demonstrated below, the absence of a careful review of the record in this case warrants remand.

**[16]** To qualify for Exemption 5's protection from disclosure, "a document must . . . satisfy two conditions: its source must be a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *Klamath*, 532 U.S. at 8.

The government primarily challenges the district court's finding that none of the still-disputed documents are "inter-agency or intra-agency memorandums or letters." *See* 5 U.S.C. § 552(b)(5). In support of its argument, the government partially undertakes the exercise that the district court should have engaged to reach its decision: the government looks to specific entries in the *Vaughn* indices and declarations, arguing they are inter-agency or intra-agency documents. Specifically, the government points to a number of documents which it convincingly argues the district court improperly found were not inter-agency or intra-agency memorandums or letters.[4]

---

[4]Relying on the declaration of Melanie Ann Pustay, Director of the Office of Information and Privacy ("OIP"), U.S. DOJ, the government cites the following documents:

1. OIP *Vaughn* Index categories 1, 2, 3, and 9, which are "confidential communications exchanged within the Executive Branch or between offices within the Department of Justice discussing options, forwarding draft language, and exchanging ideas regarding FISA amendments."

**[17]** Examining the *Vaughn* indices themselves shows the importance of engaging in the admittedly time-consuming analysis not performed here. Nearly all of the characteriza-

---

2. OIP *Vaughn* Index category 4, which "contains draft memo-randa, notes, and talking points regarding amendments to the FISA."

3. OIP *Vaughn* Index categories 3 and 9, which include deliberative emails exchanged within DOJ.

4. OIP *Vaughn* Index categories 1 and 2, which include deliberative emails exchanged between DOJ and other Executive Branch and White House officials.

Relying on the declaration of Charles Steele, Chief of Staff of DOJ's National Security Division, the government cites the following document:

1. NSD *Vaughn* Index groups 2 and 3, which are "communications exchanged within the Executive Branch or offices within the Department of Justice."

Relying on the declaration of Paul Colborn, Special Counsel in the OLC, the government cites the following documents:

1. OLC *Vaughn* Index numbers 4, 9, 112, 114, and 115, which "consist of internal Executive Branch e-mail deliberations regarding communications . . . concerning FISA."

2. OLC *Vaughn* Index numbers 46 and 74, which are "intra Executive Branch e-mails discussing the substance of communications with counsel for the telecommunications companies sharing a common interest with the United States."

3. 20 emails, for which the *Vaughn* Index numbers are not specified, "exchanged between OLC attorneys and other Department of Executive Branch staff."

Relying on the declaration of John Hackett, Director of the Information Management Office for the ODNI, the government cites the following document:

1. ODNI *Vaughn* Index category 5, which is an "email chain" "between ODNI and NSA officials."

This list may not be entirely exhaustive, but it is a powerful example of documents that, according to the relevant *Vaughn* index, were exchanged within the Executive Branch or between agencies.

tions in the government-offered declarations comport with the descriptions in the *Vaughn* indices of inter-branch or intra-branch communications. Thus, for these emails, the district court should have more closely examined the documents to determine whether they were in fact inter-agency or intra-agency memorandums or letters. Including them in a broad disclosure order was error under any standard.

In addition, in at least two instances (OLC *Vaughn* Index numbers 46 & 74), the plain language of the declaration seems to imply an intra-Executive Branch email when, in fact, the *Vaughn* Index makes clear the communications at issue were between the Executive Branch and telecommunications company representatives. This highlights the need for a fact-specific inquiry under Exemption 5.

Thus the district court's blanket finding that all of the disputed communications were not inter-branch or intra-branch memorandums or letters eligible for privilege analysis under Exemption 5 is problematic, as is clear from the face of the government's declarations and *Vaughn* indices.[5] This may have occurred because the documents in question were included with so many other documents exchanged between the Executive Branch and either Congress or the telecommunications carriers, as to which the district court correctly concluded Exemption 5 did not apply.

**[18]** Accordingly, we remand to the district court on Exemption 5 to examine each contested category of documents to determine whether its actual sender(s) and recipient(s) render it an inter-agency or intra-agency document,

---

[5]This is not to say the district court *must* find all of these documents inter-agency or intra-agency memorandums or letters on remand. However, it should examine the *Vaughn* indices and declarations, and conduct an *in camera* examination of the actual documents if necessary, to determine exactly who in the government was transmitting and receiving the information and whether Exemption 5 thus applies (in which case the district court would have to consider if the information was privileged).

keeping in mind the contours of the doctrine concerning whether the Executive Office of the President and certain other White House components are "agencies" for FOIA purposes. *See, e.g.*, 5 U.S.C. § 552(f)(1) (2006) (" '[A]gency' as defined in section 551(1) of this title includes any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President.)"); *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 156 (1980); *Judicial Watch Inc.*, 365 F.3d at 1113-22. For those documents the district court classifies as inter-agency or intra-agency, the district court will then have to consider whether any of the government's asserted privileges allow withholding. *See Klamath*, 532 U.S. at 1865.

## III.  CONCLUSION

**[19]** We affirm the district court's grant of summary judgment for EFF as to the release of names and email addresses under FOIA Exemption 6, though we reverse as to email addresses only for which other information identifying the agent at issue is available in the communication. This order may not necessarily result in disclosure of names for which the government also argues withholding pursuant to Exemption 3, because we vacate the district court's denial of summary judgment for the government and grant of summary judgment for EFF as to FOIA Exemptions 3 and 5, and remand for consideration of these Exemptions consistent with this Opinion.

**AFFIRMED in part, REVERSED in part, VACATED and REMANDED in part**. Each party shall bear its own costs on appeal.