FILED

**NOT FOR PUBLICATION**

SEP 16 2011

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY; CONSERVATION NORTHWEST, non-profit corporations, | No. 10-35102 |
| | D.C. No. 2:07-cv-01979-RAJ |
| Plaintiffs - Appellants, | |
| v. | MEMORANDUM* |
| OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, | |
| Defendant - Appellee. | |

Appeal from the United States District Court
for the Western District of Washington
Richard A. Jones, District Judge, Presiding

Argued and Submitted November 2, 2010
Seattle, Washington

Before: B. FLETCHER, FERNANDEZ, and BYBEE, Circuit Judges.

In this action under the Freedom of Information Act ("FOIA"), 5 U.S.C.

§ 552 *et seq.*, plaintiff-appellant Center for Biological Diversity ("CBD") appeals

the district court's grant of summary judgment to defendant-appellee Office of the

---

\* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

United States Trade Representative ("USTR"). CBD sought information regarding the Softwood Lumber Agreement ("SLA") between the United States and Canada, particularly details of the distribution of the so-called "meritorious initiatives" funding. CBD challenges the district court's holding that the USTR conducted an adequate search for documents responsive to CBD's FOIA request, *see id.* § 552(a)(3)(C); its determination that certain records were properly withheld under Exemptions 5 and 6, *see id.* § 552(b)(5) & (6); and its refusal of CBD's request to conduct further discovery.

We employ a two-step test in reviewing summary judgment in a FOIA case. *See Elec. Frontier Found. v. Dir. Nat'l Intelligence*, 639 F.3d 876, 883 (9th Cir. 2010). We first review de novo "whether the district court had an adequate factual basis for its decision." *Lion Raisins Inc. v. U.S. Dep't of Agric.*, 354 F.3d 1072, 1078 (9th Cir. 2004) (citations omitted). If the district court's decision had an adequate factual basis, we proceed to step two, where "we review the district court's [findings] of fact for clear error, while legal rulings, including [the district court's] decision that a particular exemption applies, are reviewed de novo." *Elec. Frontier Found.*, 639 F.3d at 883 (quotation marks and citations omitted).

Because the district court applied the wrong legal standards and neglected to engage in the correct legal analyses in its summary judgment orders, we vacate those orders and remand for further proceedings.

**1.** The district court erred in holding that the record before it demonstrated that the USTR had conducted an adequate search for records responsive to the FOIA request. CBD's request asked for all records "*related to the USTR's implementation*" of the "meritorious initiatives" program. The settlement agreement that created the "meritorious initiatives" program was reached in April 2006. Yet, as the USTR concedes, the time frame of its search for responsive records began in June 2006. We reject the USTR's contention that it was justified in limiting its search to this time period because "detailed discussion of implementation issues" did not occur until June 2006.

CBD's duty under the FOIA is to conduct a search reasonably calculated to uncover all relevant documents. *See* 5 U.S.C. § 552(a)(3)(C)–(D) (requiring agencies to conduct a search reasonably calculated to uncover all records responsive to the request). Relevance is measured with respect to which records were requested. Restricting the search for documents to that time period in which "detailed discussion of implementation issues" occurred is simply not warranted by CBD's request, which asked for *all* records related to the implementation of the

program. Based on the record before us, it is reasonably likely that records responsive to CBD's request were generated as early as April or May of 2006; by failing to search for records during that time period, therefore, the USTR did not conduct an adequate search.[1]

Probably a more important point is that none of the USTR's declarations or *Vaughn* indices provide specific information regarding what files were searched, what search terms were used, why further searches are unlikely to produce additional records, or why additional searches are impractical. We have explained that "*[i]n camera* review of the withheld documents by the court is not an acceptable substitute for an adequate *Vaughn* index," for such review "does not permit effective advocacy." *Wiener v. FBI*, 943 F.2d 972, 979 (9th Cir. 1991) (citations omitted). "Therefore, resort to *in camera* review is appropriate only after the government has submitted as detailed public affidavits and testimony as possible." *Id.* (quotation marks and citation omitted). Agency affidavits that do

---

[1] We acknowledge that the USTR contends that it "re-reviewed the files that it had initially gathered (including email messages from Mr. Mendenhall's computer), which were not limited to the period June 2006–January 2007." But this statement is ambiguous. On the one hand, the USTR has asserted that the responsive records it "initially gathered" did not encompass April or May of 2006; yet on the other hand, the statement quoted above suggests that at least some of the materials initially gathered "were not limited" to the period beginning with June 2006. This ambiguity suggests that the USTR failed to carry its burden on summary judgment of proving that it conducted a sufficient search.

not establish which files were searched and by whom, or which do not provide specific information adequate to enable the FOIA requestor to challenge the procedures utilized, are inadequate to permit the federal courts to fulfill the statutory duty to review the agency's action de novo. *See* 5 U.S.C. § 552(a)(4)(B); *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 989 (9th Cir. 2009). On remand, the USTR must supplement the record with affidavits that meet these criteria before the district court can determine whether the search was adequate.[2]

    **2.**    The district court also lacked an adequate factual basis to rule on the propriety of the USTR's withholding of certain documents under Exemption 5. That exemption permits agencies to withhold "inter-agency or intra-agency memorandums or letters" that qualify for the attorney-client, attorney work-product, and/or deliberative process privileges. 5 U.S.C. § 552(b)(5); *see also, e.g.*, *Maricopa Audobon Soc'y v. U.S. Forest Serv.*, 108 F.3d 1089, 1092–93 (9th Cir. 1997). The threshold question with the application of any privilege under Exemption 5 is whether the records are "inter-agency or intra-agency." 5 U.S.C. § 552(b)(5); *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 12 (2001) ("*Klamath*"). If a document is neither inter- nor intra-agency,

---

[2] The district court's conclusion that further discovery is unwarranted is, therefore, premature. The court must reconsider this issue after having conducted the correct legal analysis on remand.

then an agency may not withhold it, regardless of whether or not it reflects the deliberative process of the agency, attorney work product, or is an attorney-client communication. *See Klamath*, 532 U.S. at 12.

Many of the records at issue here are communications between government officials and private third parties. This fact alone suggests they do not meet Exemption 5's threshold requirement. *See id.* Under the so-called "consultant corollary," however, an agency can invoke Exemption 5 with regard to records of communications with a third party if that private individual was acting "just as a[] [government] employee would be expected to do"—meaning that she was not "represent[ing] an interest of [her] own, or the interest of any other client, when [she] advise[d] the agency that hire[d] [her]," and that her "only obligations [were] to truth and [her] sense of what good judgment calls for." *Id.* at 11. If, on the other hand, the consultant was "an interested party seeking a Government benefit at the expense of other applicants," *id.* at 12 n.4, Exemption 5 is wholly inapplicable.

Here, the district court failed to consider Exemption 5's threshold inquiry. It stated, instead, that because: (a) the communications furthered the government's deliberations; and (b) the individuals were "consulted in confidence," Exemption 5 applied. This was error. While the first factor is a necessary condition to the

application of the deliberative process privilege, and the second factor may be relevant to a claim of attorney-client privilege, neither is relevant to the threshold question of whether Exemption 5 applies at all—that is, whether the records are inter- or intra-agency. *See Klamath*, 532 U.S. at 12 (holding that the determination that records are not inter- or intra-agency "rules out any application of Exemption 5"). The relevant factual inquiry as to that question is the nature of the relationships between the government agency and the third party or parties. *See id.* at 14. The record is insufficiently developed on that point; nor is it clear which documents were shared with which third parties. We therefore remand for the supplementation of the record and for the district court to apply *Klamath*.[3]

**3.**     Finally, the district court erred in holding that the USTR was justified in withholding certain information under Exemption 6, which applies to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). CBD does not challenge the withholding of home addresses or telephone numbers, but it argues that the district court failed to apply the proper standard in evaluating

---

[3] Upon completing the correct legal inquiry under *Klamath*, the district court may need to consider the scope of the parties' agreement regarding the so-called "Canada documents," which the district court had not assessed previously before holding that Exemption 5 applied to those documents.

whether the USTR could withhold the *names* of third parties considered for inclusion on a board of directors of a newly-established foundation created to receive "meritorious initiatives" funds. We agree.

In assessing the applicability of Exemption 6 on remand, the district court should "consider, first, whether the information is contained in a personnel, medical, or 'similar' file, and, second, whether release of the information would constitute a clearly unwarranted invasion of the person's privacy." *Elec. Frontier Found.*, 639 F.3d at 886 (quotation marks and citation omitted). At the second step, the district court should "balance the individual's privacy interest against the extent to which FOIA's central purpose of opening agency action to public scrutiny would be served by disclosure." *Id.* (quotation marks and citation omitted); *see also Prudential Locations LLC v. U.S. Dep't Housing and Urban Dev.*, ___ F.3d ____, 2011 WL 2276206 at *3–5 (9th Cir. 2011).

**VACATED and REMANDED.**

FILED



SEP 16 2011

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

*Center for Biological Diversity v. USTR*, No. 10-35102 (Seattle - Nov. 2, 2010)

BYBEE, J., concurring in part and dissenting in part:

I concur in parts two and three of the memorandum disposition. For the reasons below, I respectfully dissent from part one.

An agency in receipt of a FOIA request must "demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents." *Lahr v. NTSB*, 569 F.3d 964, 986 (9th Cir. 2009) (quoting *Zemansky v. EPA*, 767 F.2d 569, 571 (9th Cir. 1985)) (internal quotation marks omitted). The agency may meet its burden with "reasonably detailed, nonconclusory affidavits submitted in good faith." *Id.* In evaluating the adequacy of the search, we must bear in mind that the issue "is not whether there might exist any other documents possibly responsive to the [FOIA] request, but rather whether the *search* for those documents was *adequate*." *Id.* at 987.

The memorandum disposition faults USTR for limiting the search to documents generated from June 2006 until January 2007. Mem. Dispo. at 3–4 & n.1. But as I read the record, the only search that was actually limited to this timeframe was the search of the backup email files stored at the Office of Administration for the Executive Office of the President ("OA"), and that was a follow-up search that was limited for reasons explained by USTR. The two declarations submitted by USTR's FOIA counsel, David Apol, make clear that the

searches of the paper and electronic files already in USTR's possession (as opposed to the backup files stored on the OA's servers) were *without regard to date*. *See* First Apol Decl. ¶¶ 25–27, Second Apol Decl. ¶¶ 12–16. These files included all electronic and paper files in the possession of the two officials most involved in the negotiations, Assistant General Counsel Jeffrey Weiss and Deputy Assistant USTR John Melle, as well as all files on the computer of former General Counsel James Mendenhall and Apol's computer. First Apol Decl. ¶ 25 ("USTR's FOIA officer instructed . . . Weiss and Melle[] to search their files for responsive documents *without* reference to date."); *id.* ¶ 27 ("USTR re-reviewed the files that it had initially gathered (including the email messages from Mr. Mendenhall's computer), which were not limited to the period June 2006–January 2007."); Second Apol Decl. ¶¶ 12–16.

From the information in Apol's affidavit, it is clear that the electronic and paper files of the two officials most involved in the negotiations, Weiss and Melle, were searched without regard to date. First Apol Decl. ¶ 25. The computer of another official closely involved in the negotiations, Mendenhall, was also searched without regard to date, as was Apol's computer. *Id.* ¶¶ 26–27. The only responsive information from before June 2006 found as a result of these searches was found in four email chains in which USTR sought counsel from DOJ on

2

structuring the meritorious initiatives program. *See id.* ¶ 27; Supp. Rev. *Vaughn* Index Doc. Nos. P296–99.

The only search limited to the June 2006–January 2007 period was the OA's search of its email archive for emails sent to and from the accounts of Mendenhall, U.S. Trade Representative Susan C. Schwab, and her chief of staff Timothy J. Keeler. These searches were so limited because the initial searches of Mendenhall's computer, along with the search of the files of Weiss and Melle (who were more closely involved in the negotiations than any of the other officials), did not turn up responsive documents from the pre-June 2006 period. First Apol Decl. ¶ 26, Second Apol Decl. ¶¶ 16–18. The timeframe of these searches was also so limited because the plaintiffs had only requested documents relating to "implementation" of the meritorious initiatives program, FOIA Request, and implementation did not begin until June 2006, First Apol Decl. ¶¶ 25–26.

I do not think, contrary to what the memorandum disposition suggests, that the record is "ambiguous" as to whether USTR's search for documents encompassed the April–May 2006 timeframe. Mem. Dispo. at 4 n.1. The search of the files most likely to contain responsive documents was unambiguously conducted without regard to date. First Apol Decl. ¶ 25. Since the search of these files did not turn up responsive documents that were generated during the

April–May 2006 timeframe, *id.*, there is no reason why USTR's search of the email archive of other accounts less likely to contain responsive documents should also have encompassed this period. To the extent the memorandum disposition holds that the search was inadequate because of the limited timeframe, I respectfully disagree.

The memorandum disposition also concludes that the search was inadequate because USTR failed to "provide specific information regarding what files were searched, what search terms were used, why further searches are unlikely to produce additional records, or why additional searches are impractical." Mem. Dispo. at 4. But Apol's declarations explain exactly what files were searched. The search included the email accounts of U.S. Trade Representative Susan Schwab and her chief of staff, Timothy Keeler. Second Apol Decl. ¶ 17. The two officials most involved in the negotiation of the SLA and the implementation of the meritorious initiatives program, Jeffrey Weiss and John Melle, "conducted thorough searches of their paper and electronic records, including e-mails, word processing files, and archive files for all [responsive] records." *Id.* ¶¶ 12–13. USTR also conducted a search of former General Counsel James Mendenhall's computer. *Id.* ¶ 16. When it became clear that the computer did not include complete email chains, USTR asked the OA to search its electronic archive for the

4

complete files. *Id.* ¶¶ 16–17. Finally, Apol searched his own computer for responsive files. First Apol Decl. ¶ 27. Therefore, contrary to what the memorandum disposition suggests, USTR explains in great detail what files were searched.

The memorandum disposition faults USTR for failing to provide "specific information" on what search terms it used, why further searches would not produce additional records, or why additional searches would be impractical. *See* Mem. Dispo. at 4. The operative standard "is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*." *Lahr*, 569 F.3d at 987 (quoting *Zemansky*, 767 F.2d at 571) (internal quotation marks omitted). In my view, USTR has met that standard, and I would affirm the judgment of the district court on this point.