**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

FOREST SERVICE EMPLOYEES FOR
ENVIRONMENTAL ETHICS,
      *Plaintiff-Appellant,*

v.

UNITED STATES FOREST SERVICE, an
agency of the U.S. Department of
Agriculture,

      *Defendant-Appellee.*

No. 05-36221

D.C. No.
CV-05-06015-MRH

OPINION

Appeal from the United States District Court
for the District of Oregon
Michael R. Hogan, District Judge, Presiding

Argued and Submitted
December 6, 2007—Portland, Oregon

Filed May 1, 2008

Before: Diarmuid F. O'Scannlain, Susan P. Graber, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge O'Scannlain

4705

**COUNSEL**

David A. Barr, Western Environmental Law Center, Eugene, Oregon, argued the cause for the plaintiff-appellant and filed briefs.

Steve Frank, Appellate Staff, Civil Division, United States Department of Justice, Washington, DC, argued the cause for the defendant-appellee and filed a brief; Leonard Schaitman, Appellate Staff, Civil Division, United States Department of Justice, Washington DC, Karen J. Immergut, United States Attorney, Portland, Oregon, and Peter D. Keisler, Assistant Attorney General, United States Department of Justice, Washington, DC, were on the brief.

**OPINION**

O'SCANNLAIN, Circuit Judge:

We are called upon to decide whether the United States Forest Service must publicly release the identities of agency personnel who responded to a wildfire that killed two Forest Service employees.

I

On July 20, 2003, the Forest Service engaged a wildfire in the Salmon-Challis National Forest in Idaho, which would later become known as the "Cramer Fire." Two days later,

Forest Service firefighters Shane Heath and Jeff Allen perished as they fought the blaze.

Four federal agencies investigated the incident: The Occupational Safety and Health Administration ("OSHA"), the Office of the Inspector General of the Department of Agriculture ("OIG"), the United States Attorney for the District of Idaho, and the Forest Service itself. OSHA issued multiple citations against the Forest Service for creating unsafe working conditions and issued a 45-page report criticizing the agency's response to the fire. The OIG released a 12-page report which was similarly critical of the Forest Service's actions. In addition, the United States Attorney filed criminal charges against Incident Commander Alan Hackett, who led the team that fought the fire. Finally, the Forest Service conducted its own investigation and produced an accident report (the "Cramer Fire Report"). The report contained a detailed narrative of the agency's response to the fire as well as findings that the Forest Service's own management failings contributed to the tragedy.

On January 12, 2004, the Forest Service Employees for Environmental Ethics ("FSEEE"), a self-described public interest watchdog organization, filed a Freedom of Information Act ("FOIA") request with the Forest Service seeking the release of the Cramer Fire Report. *See* 5 U.S.C. § 552. The Forest Service complied with the request, but redacted the names of all twenty-three Forest Service employees identified in the Report. The agency cited FOIA Exemption 6, which enables the government to withhold "personnel and medical and similar files" that implicate personal privacy, as justification for the redactions. *See id.* § 552(b)(6). The FSEEE filed an administrative appeal, which the Forest Service denied.

Some time later, the Forest Service announced that it had decided to discipline six employees involved in the incident, but withheld their identities due to privacy concerns. In addition, the identities of several employees named in the Report

become known in various ways. First, Incident Commander Hackett waived any right to confidentiality and the Forest Service released a revised Report with all references to Hackett unredacted.[1] In addition, an unredacted copy of the Cramer Fire Report was leaked to the family of one of the deceased firefighters. The Forest Service discovered the leak and disciplined the Forest Service employees responsible. Finally, the OSHA report identified several Forest Service employees who held positions of responsibility during the incident.

The FSEEE filed a complaint in the District Court for the District of Oregon seeking an unredacted copy of the Cramer Fire Report. On cross-motions for summary judgment, the district court concluded that Exemption 6 authorized the Forest Service to withhold the identities of the employees named in the Report in the interests of their personal privacy. The district court found that employees subject to disciplinary sanctions as well as those who merely served as cooperating witnesses had privacy interests in avoiding the "embarrassment, shame, stigma, and harassment" that would arise from their public association with the Cramer Fire and further found that the release of such employees' identities would not materially contribute to the public's understanding of the event. The FSEEE timely filed this appeal.

## II

**[1]** FOIA was enacted to facilitate public access to government records. *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 151 (1989). As the Supreme Court has explained, the statute's purpose is "to pierce the veil of administrative secrecy and to open agency action to the light of public scruti-

---

[1]Hackett was placed on federal probation for eighteen months and was terminated by the Forest Service. As part of his criminal pretrial diversion program, Hackett agreed to waive his right to confidentiality regarding the reasons for his termination.

ny." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976) (internal quotation marks and citation omitted). Thus, among other things, FOIA requires every federal entity presented with a request for records under the statute to make such records "promptly available to any person." 5 U.S.C. § 552(a)(3)(A). However, this requirement does not apply if the requested information falls within one of nine exemptions. *Id.* § 552(b).

**[2]** One such exemption, Exemption 6, provides that government entities may withhold information from "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." *Id.* § 552(b)(6). The district court concluded that the Cramer Fire Report was a "similar file" subject to this exemption and that the disclosure of the identities of the employees named in the report would constitute a "clearly unwarranted" invasion of their privacy. We consider each conclusion in turn.

## A

**[3]** The phrase "similar files" has a "broad, rather than a narrow meaning." *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 600 (1982). As such, we have previously held that "[g]overnment records containing information that applies to particular individuals satisfy the threshold test of Exemption 6." *Van Bourg, Allen, Weinberg & Roger v. NLRB*, 728 F.2d 1270, 1273 (9th Cir. 1984). Specifically, we have classified a list of the names and home addresses of federal employees as a "similar file" under this exemption. *Id.*; *see also U.S. Dep't of Def. v. FLRA*, 510 U.S. 487, 494, 500-01 (1994) (concluding that the home addresses of federal employees could be withheld under Exemption 6). And, other courts of appeals have determined that the names of agency personnel may be withheld from responses to FOIA requests under Exemption 6. *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 198-99 (D.C. Cir. 2006) (holding that Exemption 6 authorized the FDA to

redact the names of agency personnel from documents released in response to a FOIA request for records related to the abortifacient drug, RU-486); *Wood v. FBI*, 432 F.3d 78, 86 (2d Cir. 2005) (holding that Exemption 6 authorized the Justice Department to redact the names of investigating personnel from an administrative investigation report detailing the discipline of two FBI agents). Accordingly, we have little difficulty in concluding that the names and identifying information contained in the Cramer Fire Report meet the "similar file" requirement of Exemption 6.

B

Having determined that the Cramer Fire Report satisfies this threshold test, we next consider whether the disclosure of the employees' identities would constitute a "clearly unwarranted" invasion of their personal privacy. 5 U.S.C. § 552(b)(6). In conducting this inquiry, we " 'balance the public interest in disclosure against the interest Congress intended the [e]xemption to protect.' " *Dep't of Def.*, 510 U.S. at 495 (quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 776 (1989)).[2] Two guideposts are critical to our analysis. First, "the only relevant 'public interest' " is the extent to which disclosure would " 'contribut[e] significantly to public understanding of the operations or activities of the government.' " *Id.* (emphasis omitted) (quot-

---

[2]The balancing of public and private interests under Exemption 6 mirrors that which applies under Exemption 7(C). *Id.* (citing *Reporters Comm.*, 489 U.S. at 775). Exception 7(C) permits the withholding of "records or information compiled for law enforcement purposes" that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). The Supreme Court has interpreted Exemption 7(C) as "more protective of privacy" than Exemption 6, *Dep't of Def*, 510 U.S. at 497 n.6, but explained that the only distinction between the balancing tests applied to them is the "magnitude of the public interest" required to override the respective privacy interests they protect. *Id.* Accordingly, precedents that apply Exemption 7(C) are relevant to our analysis of Exemption 6 insofar as they identify cognizable public and private interests, even if their balancing of such interests is less instructive.

ing *Reporters Comm.*, 489 U.S. at 775). In other words, "information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct" is not the type of information to which FOIA permits access. *Id.* at 495-96 (citations and internal quotation marks omitted).

Second, the reasons why the FSEEE seeks the identities of the Forest Service employees are irrelevant to our inquiry. " '[W]hether an invasion of privacy is *warranted* cannot turn on the purposes for which the request for information is made.' " *Id.* at 496 (emphasis in original) (quoting *Reporters Comm.*, 489 U.S. at 771). FOIA provides every member of the public with equal access to public documents and, as such, information released in response to one FOIA request must be released to the public at large. *Id.* (citing *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975)). Accordingly, we consider the consequences of disclosure of the employees' identities to the entire public.[3]

1

We begin with the privacy interests of the Forest Service employees. At the outset, we note that while the privacy interests of public officials are "somewhat reduced" when compared to those of private citizens, "individuals do not waive all privacy interests . . . simply by taking an oath of public office." *Lissner v. U.S. Customs Serv.*, 241 F.3d 1220, 1223 (9th Cir. 2001) (citation omitted).

---

[3]As a preliminary matter, we reject the FSEEE's contention that the unauthorized leak of the unredacted Cramer Fire Report or OSHA's decision to identify certain employees in its own report diminishes the Forest Service's ability to apply Exemption 6 to redact the identities from the Report. *See Dep't of Def.*, 510 U.S. at 500 (rejecting the argument that information publicly available through sources cannot be withheld under Exemption 6 if the exemption's requirements are otherwise met); *Reporters Comm.*, 489 U.S. at 767-68 (reaching the same conclusion under Exemption 7(C)).

**[4]** In the past, we have recognized that a government employee's privacy interests may be diminished in cases where information sought under FOIA would likely disclose "official misconduct." *See id.* at 1223-24 (holding that reports describing the arrests of two city police officers for smuggling steroids could not be withheld under Exemption 6); *Dobronski v. FCC*, 17 F.3d 275, 278-79 (9th Cir. 1994) (concluding that an FCC assistant bureau chief's privacy interests were "nominal" where a FOIA requester sought the official's work attendance and sick leave records to demonstrate that she had taken unaccrued sick time). In addition, we have placed emphasis on the employee's position in her employer's hierarchical structure as "lower level officials . . . generally have a stronger interest in personal privacy than do senior officials." *Id.* at 280 n.4 (citing *Hunt v. FBI*, 972 F.2d 286, 289 (9th Cir. 1992)); *see also Stern v. FBI*, 737 F.2d 84, 92 (D.C. Cir. 1984) (reasoning that the "level of responsibility held by a federal employee . . . [is an] appropriate consideration[ ] for determining the extent of the public's interest in knowing the identity of that censured employee" (citation omitted)).

**[5]** As the district court explained, the twenty-two employees identified in the Cramer Fire Report were "low and mid-level" employees. In addition, although the Forest Service has disciplined six of these employees, none has been accused of official misconduct and the remaining employees were merely cooperating witnesses. Accordingly, we agree with the district court that neither the employees' status as civil servants nor the Forest Service's disciplinary decisions strip them of their privacy interests under Exemption 6.

**[6]** Second, we consider the district court's conclusion that the employees possessed privacy interests in avoiding the "embarrassment, shame, stigma, and harassment" that would arise from their public association with the incident. The avoidance of harassment is a cognizable privacy interest under Exemption 6. We have previously construed the exemption to protect against the harassment associated with

unwanted commercial solicitations. *See Painting Indus. of Haw. Mkt. Recovery Fund v. Dep't of Air Force*, 26 F.3d 1479, 1483 (9th Cir. 1994); *Minnis v. U.S. Dep't of Agric.*, 737 F.2d 784, 787 (9th Cir. 1984). The Supreme Court recognized a similar interest in *Department of Defense*, where it held that Exemption 6 authorized the Defense Department to withhold the home addresses of its employees from its response to a FOIA request filed by the unions representing the employees. 510 U.S. at 502. Noting that the unions sought this information precisely because nonunion employees had decided not to share it with them, the Supreme Court found it "clear" that such employees had "*some* nontrivial privacy interest in nondisclosure, and in avoiding the influx of union-related mail, and, perhaps, union-related telephone calls or visits, that would follow disclosure." *Id.* at 501 (emphasis in original).

[7] In this case, the potential for harassment that drew the district court's attention was that which would be presented by the media, curious neighbors, and the FSEEE itself. By its own admission, the FSEEE plans to contact the Forest Service employees named in the Report if their identities are disclosed. Moreover, in light of the significant public attention the Cramer Fire received, it is likely that the media and others would join the FSEEE in such pursuit. The fact that the record does not indicate that any of the employees have spoken out in the five years since the incident occurred leads us to conclude that such contacts would be unwanted.

[8] In addition, we recognize that disclosure of the employees' identities may also subject them to embarrassment and stigma. The Forest Service's response to the Cramer Fire was met with heavy criticism, particularly because the fire claimed the life of two Forest Service employees. Therefore, the public association of the employees with this tragedy would subject them to the risk of embarrassment in their official capacities and in their personal lives.

**[9]** We conclude that such privacy interests are cognizable under Exemption 6. *See Wood*, 432 F.3d at 88 (holding that government employees' "interest against possible harassment and embarrassment . . . raises a measurable privacy concern that must be weighed against the public's interest in disclosure"); *Stern*, 737 F.2d at 91-92 (determining that government agents who were censured but not criminally charged had a privacy interest in avoiding "embarrassment or stigma" that would arise from the release of their identities). And, as the Supreme Court has held, "*some* nontrivial privacy interest" is sufficient to justify the withholding of information under Exemption 6 unless the public interest in disclosure is sufficient to outweigh it. *Dep't of Def.*, 510 U.S. at 501.

2

**[10]** Satisfied that privacy interests are at stake here, we turn to the public interests asserted by the FSEEE. We emphasize that "the only relevant public interest" under Exemption 6 is the extent to which the information sought would " 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.' " *Id.* at 497 (quoting *Reporters Comm.*, 489 U.S. at 773). Thus, to compel the disclosure of the Forest Service employees' identities, such information must "appreciably further" the public's right to monitor the agency's action. *Id.* at 497; *see also Hopkins v. U.S. Dep't of Hous. & Urban Dev.*, 929 F.2d 81, 88 (2d Cir. 1991) (concluding that "disclosure of information affecting privacy interests is permissible only if the information reveals something *directly* about the character of a government agency or official" (emphasis in original) (citation omitted)).

The FSEEE contends that disclosure of the employees' identities will advance several public objectives. First, it argues that disclosure will allow the public to determine whether the Forest Service reassigned employees identified in the Cramer Fire Report to non-firefighter positions as a result

of the incident. Second, the FSEEE suggests that disclosure will allow the public to ascertain whether such employees were adequately trained. Finally, the FSEEE contends that the revelation of the employees' identities will allow the public to "determine whether the Forest Service accurately recounted the incident in the Cramer Fire Report," to "reconcile inconsistencies," and to "shed additional light on what happened and how it can be prevented in the future" by, among other things, conducting "interviews with the participants."

To the extent that the FSEEE seeks to conduct its own investigation of the Cramer Fire, we note that four federal agencies have investigated the incident and produced three publicly-available reports. As such, the FSEEE "already ha[s] a substantial amount of the information they seek," and we will not require the disclosure of the employees' identities unless the "marginal additional usefulness" of such information is sufficient to overcome the privacy interests at stake. *Painting Indus.*, 26 F.3d at 1486.

Both OSHA and OIG have investigated the training received by the Forest Service employee and reported findings to the public. Moreover, the Forest Service's subsequent personnel actions raise strong privacy interests that are not overcome by the public's marginal interest in conducting another investigation of the agency's response to the tragedy. In addition, by the FSEEE's own admission, the identities of the employees alone will shed no new light on the Forest Service's performance of its duties beyond that which is already publicly known. Instead, the FSEEE seeks to contact these employees itself to determine what occurred at the Cramer Fire and to confirm the veracity of the publicly-available reports. We have previously expressed skepticism at the notion that such derivative use of information can justify disclosure under Exemption 6. In *Painting Industry*, a labor organization sought the release of payroll records submitted to the Air Force by a government contractor working on an Air Force base for the purpose of determining whether the Air

Force was diligently enforcing a federal wage statute. *Id.* at 1481. Direct contact with the employees was necessary to accomplish the organization's goal. *Id.* at 1484-85. We held that Exemption 6 authorized the Air Force to withhold the payroll records because the only "additional public benefit" the release of the employees' personal information would provide was "inextricably intertwined" with the invasion of the employees' privacy. *Id.* at 1485.

**[11]** The public benefit the FSEEE asserts and the privacy interests of the Forest Service employees are equally inseparable. Under the FSEEE's theory, the only way the release of the identities of the Forest Service employees can benefit the public is if the public uses such information to contact the employees directly. As we held in *Painting Industry*, such use cannot justify the release of the information the FSEEE seeks.

**[12]** In addition, we are not persuaded that direct contact with the employees would produce any information that has not already been revealed to the public through the four investigations that have already occurred and the three reports that have been publicly released. *See U.S. Dep't of State v. Ray*, 502 U.S. 164, 178-79 (1991) (applying Exemption 6 to withhold the identities of Haitian refugees interviewed in State Department reports where there was no indication that an additional round of interviews by the FOIA requester "would produce any relevant information that is not set forth in the documents that have already been produced"). The Cramer Fire Report extensively describes the Forest Service's actions during each hour of the blaze, and the OSHA and OIG reports are similarly thorough. We generally accord government records a "presumption of legitimacy." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004) (citing *Ray*, 502 U.S. at 178-79). Moreover, OSHA and the OIG had little to gain from withholding criticism of the Forest Service, as their pointed and disapproving conclusions indicate. As a result of the substantial information already in the public domain, we must conclude that the release of the identities of

the employees who participated in the Forest Service's response to the Cramer Fire would not appreciably further the public's important interest in monitoring the agency's performance during that tragic event.

## III

**[13]** Balancing the privacy interests at stake against the public interest involved, we conclude that the Forest Service is not required to release the identities of the employees named in the Cramer Fire Report. Accordingly, the district court's grant of summary judgment in favor of the Forest Service is

**AFFIRMED.**