OPINION
PER CURIAM:
The quéstion in this case is whether the identity of a person complaining to a federal agency about a violation of law is protected from disclosure under Exemption 6 of the Freedom of Information Act (“FOIA”). Plaintiff Prudential Locations (“Prudential”) filed a FOIA request with the U.S. Department of Housing and Urban Development (“HUD”), asking it to disclose the names of the individuals who had complained to HUD that Prudential had violated the Real Estate Settlement Procedures Act (“RESPA”). (For convenience, we will use the plural even though it is possible that the two complaints were written by the same person.) HUD invoked Exemption 6 to justify redacting the documents to conceal the authors’ identities. Exemption 6 covers “personnel and medical files and similar files the disclo *427 sure of which would constitute a clearly unwarranted invasion of personal privacy.” 5 U.S.C. § 552(b)(6). The district court held that Exemption 6 justifies the agency’s decision to redact identifying information. Prudential Locations LLC v. U.S. Dep’t of Housing & Urban Dev., 646 F.Supp.2d 1221 (D.Hawai’i 2009). We affirm.
A. Background
HUD is the agency responsible for administering and enforcing RESPA, 12 U.S.C. §§ 2601-2617. RESPA prohibits referral fees for real estate settlement services: “No person shall give and no person shall accept any fee, kickback, or thing of value [for referring] business incident to or a part of a real estate settlement service involving a federally related mortgage loan.” Id. § 2607(a). HUD initiated two investigations of Prudential when it received communications, sent five years apart, alleging that Prudential gave referral awards in violation of RESPA.
In the first communication, the author wrote a one-page letter dated July 7, 2003, (the “2003 Letter”) alleging that “Prudential Locations Real Estate Salespersons get monetary kickbacks ($ $,$ $ $) for the amount of business that is referred to Wells Fargo.” The author explained that ‘Wells Fargo” was shorthand for Wells Fargo Home Mortgage of Hawaii, a joint venture formed by Wells Fargo Bank and Prudential Locations. The author attached an article published on January 26, 2003, in the Honolulu Star-Bulletin, quoting it as saying that “agents from firms ... throughout Hawaii ... were eligible to win [a] Mercedes by referring at least $1 million in loans to Wells Fargo in 2002.” The author asked, “Is it a violation of RESPA for real estate agents to receive compensation for steering business to a specific Lender?” The author stated that he or she anticipated that HUD would provide a written reply. The author neither asked for anonymity nor authorized HUD to reveal his or her identity.
In response to the letter, HUD opened an investigation. HUD discovered, consistent with the letter’s allegations, that Prudential rewarded agents with “prizes” in return for referring over $1 million of business to Wells Fargo. The prizes included a Mercedes-Benz lease and vacation packages to Thailand and Las Vegas. HUD closed the investigation in 2005 after entering into a settlement agreement under which Prudential agreed to stop violating RESPA and to pay a penalty of $48,000.
In the second communication, the author wrote HUD an email dated January 19, 2008 (the “2008 Email”). The author, who was aware of the $48,000 penalty imposed under the 2005 settlement agreement, wrote that Prudential was “blatantly violating RESPA laws again.” The author alleged that Prudential was “charging an extra fee for an in house transaction coordinator EVERY TIME to agents that do not use ($75 extra fee) Wells Fargo (affiliated company of Prudential Locations LLC) and ($50 extra fee) Island Title (affiliated company of Prudential Locations LLC).” The author wrote that an agent from Prudential gave the author this information and “expressed concern that his company was violating RESPA laws again.” The author of the 2008 Email asked HUD to keep his or her name anonymous.
In response to the 2008 Email, HUD opened a second investigation. In March 2009, it concluded that the evidence did not substantiate the email’s allegations and closed the investigation.
In June 2008, while the second investigation was underway, Prudential made a FOIA request for HUD’s records of the two investigations. Prudential specifically *428 asked HUD to produce information “to show the identity of all parties who provided information to HUD relating to the initiation” of both HUD investigations. In March 2009, HUD produced roughly four-hundred pages of responsive documents.
HUD produced the 2003 Letter and the 2008 Email in response to the FOIA request, but it redacted information in both documents in order to conceal the authors’ identities. HUD redacted the letterhead and the signature line of the 2003 Letter. HUD produced a redacted version of the 2008 Email as part of its initial response, and it turned over a less redacted version of the email during the course of this litigation. In the less redacted version, HUD redacted the “From” field in the email header, the first sentence, and the author’s contact information. HUD also redacted language after the phrase “but I would like to remain anonymous.” The length of this redaction suggests that it contained ten or eleven average-length words. Its location in the email suggested that the redacted language explained why the author desired anonymity.
In a letter to Prudential’s attorney, HUD justified the redactions under Exemption 6. HUD explained that “[rjelease of this information would constitute an unwarranted invasion of personal privacy” outweighing any “interest of the general public in reviewing these portions of government documents.”
Shortly thereafter, Prudential brought suit in federal district court specifically seeking disclosure of the identities of the authors of the two communications. Prudential moved for summary judgment. HUD filed a cross-motion for summary judgment that included an affidavit from Ivy Jackson, HUD’s Director of the Office of RE SPA and Interstate Land Sales. Jackson described HUD’s general policy of concealing the identity of any complainant “whether or not the complainant affirmatively authorized the release [of his or her name].” However, it appears that HUD may release the complainant’s name under certain circumstances if the “person has specifically authorized release of his or her name.” She explained that HUD relies on “industry competitors and insiders” as sources of information to detect RESPA violations. She feared that industry insiders would be “vulnerable to retaliation, i.e. loss of employment, loss of business and legal action,” if HUD were forced to disclose their identities. Jackson stated that when she speaks before industry groups, she reminds industry insiders of HUD’s policy of confidentiality.
The district court entered summary judgment in favor of HUD, holding that the redacted information was protected from disclosure under Exemption 6. Prudential Locations, 646 F.Supp.2d at 1228. The court balanced the privacy interest of the individuals whose names were redacted against the public’s interest in disclosure. Id. at 1226. On the privacy-interest side, the court found that complainants reporting RESPA violations could be subject to retaliation. Id. at 1226-27. On the public-interest side, the court found that disclosure of the complainants’ identities would not reveal significant and otherwise unavailable information about HUD’s activities. Id. at 1227. The court also found that Prudential provided no evidence indicating that the identity of complainants would reveal any misconduct or bias on the part of HUD. Id.
After initial argument in this case, we reversed the district court, holding that HUD could not redact identifying information under Exemption 6, absent an additional showing concerning the identity of the complainants and the privacy interests that were likely to be infringed. Prudential Locations LLC v. U.S. Dep’t of Hous *429 ing & Urban Dev., 648 F.3d 768 (9th Cir.2011). On the government’s petition for panel rehearing, we ordered the case rear-gued. We now affirm.
B. Standard of Review
“[A] two-step standard of review applies to summary judgment in FOIA cases. The court first determines under a de novo standard whether an adequate factual basis exists to support the district court’s decisions. If an adequate factual basis exists, then the district court’s conclusions of fact are reviewed for clear error, while legal rulings, including its decision that a particular exemption applies, are reviewed de novo.” Lane v. Dep’t of Interior, 523 F.3d 1128,1135 (9th Cir.2008) (internal citations omitted).
C. Discussion
FOIA grants access to government archives for public dissemination of “ ‘official information long shielded unnecessarily from public view.’ ” Milner v. Dep’t of Navy, — U.S.-, 131 S.Ct. 1259, 1262, 179 L.Ed.2d 268 (2011) (quoting EPA v. Mink, 410 U.S. 73, 80, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973)). Under FOIA, an agency must make government records available to the public upon a properly made request. 5 U.S.C. § 552(a)(3)(A). However, the agency need not disclose documents or information falling within any of nine statutory exemptions. Id. § 552(b)(l)-(9). The agency bears the burden of justifying the withholding of information under an exemption. Id. § 552(a)(4)(B).
Exemption 6 allows an agency to withhold “personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.” Id. § 552(b)(6). We ask two questions in deciding whether an agency has properly withheld records or information under Exemption 6. First, we ask whether the document qualifies under the heading of “personnel and medical files and similar files.” Id. Second, we ask whether production of the document, or information contained therein, “would constitute a clearly unwarranted invasion of personal privacy.” Id.; see, e.g., Elec. Frontier Found, v. Office of the Dir. of Nat’l Intelligence, 639 F.3d 876, 886 (9th Cir.2010); Forest Serv. Emps. for Envtl. Ethics v. U.S. Forest Serv., 524 F.3d 1021, 1024 (9th Cir.2008).
1. “Personnel and Medical Files and Similar Files”
Exemption 6 was “ ‘intended to cover detailed Government records on an individual which can be identified as applying to that individual.’ ” U.S. Dep’t of State v. Wash. Post Co., 456 U.S. 595, 602, 102 S.Ct. 1957, 72 L.Ed.2d 358 (1982) (quoting H.R.Rep. No. 89-1497, at 11, reprinted in 1966 U.S.C.C.A.N. 2418, 2428). “Information unrelated to any particular person presumably would not satisfy the threshold test.” Id. at 602 n. 4, 102 S.Ct. 1957. The Supreme Court has concluded that the phrase “similar files” in Exemption 6 has a “broad, rather than a narrow, meaning.” Id. at 600, 102 S.Ct. 1957. “Similar files” include files containing citizenship information on specific individuals, id. at 602, 102 S.Ct. 1957; reports on interviews with Haitian nationals involuntarily returned to Haiti, U.S. Dep’t of State v. Ray, 502 U.S. 164, 173, 112 S.Ct. 541, 116 L.Ed.2d 526 (1991); a report analyzing an agency’s response to a wildfire, Forest Serv. Emps., 524 F.3d at 1024; and an “Excelsior list” of names and addresses of employees eligible to vote in a union representation election, Van Bourg, Allen, Weinberg & Roger v. NLRB, 728 F.2d 1270,1273 (9th Cir.1984).
*430 The district court in this case held that the 2003 Letter and the 2008 Email are “similar files” within the meaning of Exemption 6. Prudential Locations, 646 F.Supp.2d at 1226. We are skeptical that a communication sent by an individual to a federal enforcement agency complaining about illegal business activity is sufficiently “similar” to a “personnel or medical ... file” of that individual for the communication to qualify under Exemption 6. We recognize that the district court’s holding has out-of-circuit support. See, e.g., Lakin Law Firm, P.C. v. Fed. Trade Comm’n, 352 F.3d 1122 (7th Cir.2003) (upholding redaction under Exemption 6 of identities of individuals who complained to the FTC about illegal business activity); Strout v. U.S. Parole Comm’n, 40 F.3d 136 (6th Cir.1994) (upholding redaction under Exemption 6 of identity of individuals who wrote to the Parole Commission opposing Strout’s parole). Indeed, our own circuit’s decision in Forest Service Employees, upholding redaction of employees’ names from a report on a forest fire prepared by the Forest Service, provides some support for the district court’s holding. See 524 F.3d at 1024.
Prudential has not contested on appeal the holding that the 2003 Letter and 2008 Email are “similar files” under Exemption 6. We therefore assume without deciding that the 2003 Letter and 2008 Email are “similar files” within the meaning of Exemption 6. See Elec. Frontier Found., 639 F.3d at 886 (analyzing under Exemption 6 redaction of identities of lobbyists from communications sent by the lobbyists to federal agencies in attempts to influence legislation; noting that “this may be a closer question than the government describes”; and assuming without deciding that the communications were “similar files” in the absence of objection by the requesting party).
2. “Clearly Unwarranted Invasion of Personal Privacy”
The second requirement under Exemption 6 is that disclosure of the information “would constitute a clearly unwarranted invasion of personal privacy.” § 552(b)(6). To answer this question, “we must balance the privacy interest protected by the exemptions against the public interest in government openness that would be served by disclosure.” Elec. Frontier Found., 639 F.3d at 886; see also Ray, 502 U.S. at 175, 112 S.Ct. 541.
(i) Cognizable Personal Privacy Interest
To withhold information under Exemption 6, an agency must show that “some nontrivial privacy interest” is at stake. U.S. Dep’t of Def. v. FLRA, 510 U.S. 487, 501, 114 S.Ct. 1006, 127 L.Ed.2d 325 (1994). If only a trivial privacy interest is implicated, then Exemption 6 cannot apply. But if there is a “nontrivial privacy interest,” then the agency must balance the individual’s interest in personal privacy against the public’s interest in disclosure. See Forest Serv. Emps., 524 F.3d at 1027 (“ ‘[S]ome nontrivial privacy interest’ is sufficient to justify the withholding of information under Exemption 6 unless the public interest in disclosure is sufficient to outweigh it.” (emphasis omitted)); Multi Ag Media LLC v. Dep’t of Agric., 515 F.3d 1224, 1229-30 (D.C.Cir.2008) (once a court finds “anything greater than a de minimis privacy interest,” it must then address “whether the public interest in disclosure outweighs the individual privacy concerns” (internal quotation marks omitted)).
A broad range of personal privacy interests are cognizable under FOIA, including under Exemption 6. The Court has emphatically rejected a “cramped notion of personal privacy.” U.S. Dept, of Justice v. Reporters Comm, for Freedom of Press, *431 489 U.S. 749, 768, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989). Individuals not only-have an obvious privacy interest in being free from retaliation, harassment, embarrassment, or stigma. Ray, 502 U.S. at 176-77, 112 S.Ct. 541; Forest Serv. Emps., 524 F.3d at 1026. They also have a privacy interest in simply “keeping personal facts away from the public eye.” Reporters Comm., 489 U.S. at 769, 109 S.Ct. 1468. “[Pjrivacy encompass[es] the individual’s control of information concerning his or her person.” Id. at 763, 109 S.Ct. 1468.
In Ray, the Supreme Court held that Exemption 6 allowed the State Department to redact the names of Haitian nationals interviewed by the agency after they were involuntarily returned to Haiti. Ray, 502 U.S. at 171, 112 S.Ct. 541. The Court noted that disclosure of the identities of those who cooperated with the State Department investigation “could subject them or their families to embarrassment in their social and community relationships.” Id. at 176, 112 S.Ct. 541 (internal quotation marks omitted). The Court gave “great weight” to the interviewees’ privacy interest in being free “from any retaliatory action that might result from a renewed interest in their aborted attempts to emigrate,” even though it was “impossible to measure” the danger of retaliation or other mistreatment. Id. at 176-77, 112 S.Ct. 541. The Court emphasized that the interviewees “might have been willing to discuss private matters that he or she would not otherwise expose to the public” because they had secured an “assurance of confidentiality.” Id. at 177, 112 S.Ct. 541.
Our court has also upheld the non-disclosure of identifying information under Exemption 6. In Forest Service Employees, a “public interest watchdog organization” requested release of a report prepared by the U.S. Forest Service. 524 F.3d at 1023. The report contained a detailed narrative of the Service’s heavily criticized response to a wildfire, and it concluded that the response contributed to the fire. Id. The Service released the report but redacted under Exemption 6 the names of its low- and mid-level employees identified in the report. Id. at 1023, 1026. We held that the redactions were justified under Exemption 6, recognizing as cognizable privacy interests the “potential for harassment,” “embarrassment,” and “stigma” that would arise from public association with the incident. Id. at 1026. Among other things, we noted that the plaintiff organization planned to contact the employees once their identities were disclosed, and that the media and others would likely contact the employees as well. Id.
Similarly, in Lahr v. National Transportation Safety Board, 569 F.3d 964 (9th Cir.2009), the National Transportation Safety Board released documents obtained during an investigation of the midair explosion of TWA Flight 800, but redacted under Exemptions 6 and 7(C) the names of eyewitnesses and investigating officers. We wrote that “protection from [unwanted contact by third parties] facilitated by disclosure of a connection to government operations and investigations is a cognizable privacy interest under Exemptions 6 and 7(C).” Id. at 976. Relying on Forest Service Employees, we held that the identities of both the eyewitnesses and FBI investigators were protected from disclosure. Id. at 976-78.
In some of these cases, the affected individuals had received an assurance of confidentiality from the government. Such an assurance is neither a necessary, nor a necessarily sufficient, condition for the existence of a cognizable personal privacy interest under Exemption 6. See Ray, 502 U.S. at 177, 112 S.Ct. 541. But as the Court made clear in Ray, such an assur- *432 anee is a relevant factor. See id. Here, the affidavit of HUD official Jackson tells us that HUD has a publicly announced policy of preserving the confidentiality of individuals who complain to the agency about violators of RESPA. We recognize that only the author of the 2008 Email specifically requested anonymity. But in light of the repeated public pronouncements of HUD’s confidentiality policy, we conclude that the authors of both the 2003 Letter and 2008 Email had reasonable expectations that HUD would protect their confidentiality even without a specific request that it do so.
Given the circumstances of this case, we conclude that the authors of the 2003 Letter and 2008 Email have cognizable personal privacy interests under Exemption 6.
(ii) Personal Privacy Interest and Public Interest in Disclosure
To determine whether releasing the identities of the authors of the letter and email “would constitute a clearly unwarranted invasion of personal privacy,” we balance the interest in personal privacy against the public interest in disclosure. In performing that balancing, we “may properly discount ... the probability” of an invasion of personal privacy. Dep’t of Air Force v. Rose, 425 U.S. 352, 380, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976). But the invasion of a personal privacy interest may be “clearly unwarranted” even when the invasion of privacy is far from a certainty, as demonstrated by two recent cases. In Lahr, we upheld the application of Exemption 6 to protect the identities of eyewitnesses to the explosion of TWA Flight 800 when there was a “potential for unwanted contact by third parties, including the plaintiff [an individual interested in the cause of the explosion], media entities, and commercial solicitors.” Lahr, 569 F.3d at 975 (emphasis added). Similarly, in Forest Service Employees, we upheld the application of Exemption 6 because of the “potential for harassment” by “the media, curious neighbors, and [the plaintiff organization],” and because releasing the employees’ identities “may also subject them to embarrassment and stigma.” Forest Serv. Emps., 524 F.3d at 1026 (emphasis added).
The district court concluded that revealing the identities of the authors of the 2003 Letter and 2008 Email would likely invade the authors’ privacy interests. Prudential Locations, 646 F.Supp.2d at 1226-27. We agree with that conclusion. The authors of the two communications could easily be adversely affected if their identities become known. Given the nature of their communications, they appear to have inside knowledge of the mortgage industry in Hawai’i. HUD official Jackson stated that the agency promises anonymity to industry insiders who report suspected wrongdoing because of their vulnerability to retaliation such as loss of employment or loss of business. The district court noted in its opinion that Prudential had “mention[ed] the possibility of a civil lawsuit against the unidentified individuals for their ‘sham’ complaints.” Prudential Locations, 646 F.Supp.2d at 1225. Prudential went to the expense not only to make a FOIA request for HUD’s records from the two investigations. When it received what appear to be all relevant documents, with only the identities of the authors of the 2003 Letter and 2008 Email redacted, Prudential then also went to the additional expense of filing a federal suit and pursuing an appeal with the sole aim of identifying the authors. Under these circumstances, we conclude that there is a significant risk of harassment, retaliation, stigma, or embarrassment of the authors if their identities are revealed. See Ray, 502 U.S. at 176-77, *433 112 S.Ct. 541; Forest Serv. Emps., 524 F.3d at 1026.
Against the authors’ privacy interest, we weigh the public interest in disclosure of their names. The Court has narrowly defined the public interest that is cognizable in a FOIA balancing: “[T]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would ‘she[d] light on an agency’s performance of its statutory duties’ or otherwise let citizens know ‘what their government is up to.’ ” Dep't of Def, 510 U.S. at 497, 114 S.Ct. 1006 (1994) (quoting Reporters Comm., 489 U.S. at 773, 109 S.Ct. 1468) (second alteration in original). Revealing the identity of a private individual does not further the public interest unless it casts light on the conduct of the government:
Official information that sheds light on an agency’s performance of its statutory duties falls squarely within [FOIA’s] statutory purpose. That purpose, however, is not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency’s own conduct.
Reporters Comm., 489 U.S. at 773, 109 S.Ct. 1468.
Prudential has not shown that learning the identities of those who wrote the letter or the email would add significantly to the already available information concerning the manner in which HUD has performed its statutory duties. Prudential has made no allegation, and has presented no evidence, that HUD performed either of the two investigations improperly or inefficiently. Prudential does not contend that HUD’s finding in the first investigation that Prudential had violated RESPA by awarding prizes for steering business to its jointly owned business was improper; nor does Prudential contend that the $48,000 fine, paid in settlement, was excessive in light of its violation of the law. Prudential also does not contend that HUD acted improperly or inefficiently in conducting the second investigation, at the end of which HUD concluded that the author’s allegation of wrongdoing by Prudential could not be substantiated.
This case is quite different from Electronic Frontier Foundation, in which we held that there was a substantial public interest in learning the identities of lobbyists who had communicated with the executive branch in an attempt to influence legislation. The lobbyists had sought legislation that would provide retroactive protection from liability for telecommunications carriers that had cooperated with the government in conducting “a warrantless, electronic surveillance program on millions of American telephones.” Elec. Frontier Found., 639 F.3d at 879. We wrote:
There is a clear public interest in public knowledge of the methods through which well-connected corporate lobbyists wield their influence_ With knowledge of the lobbyists’ identities, the public will be able to determine how the Executive Branch used advice from particular individuals and corporations in reaching its own policy decisions.... In short, we find the public interest in “government openness that would be served by disclosure” of how the government makes decisions potentially shielding firms lobbying (and donating to campaigns) from nine-figure liabilities to be plainly important.
Id. at 887-88. Here, the authors did not seek to influence legislation or to change any substantive policy. Instead, they alleged violations of an existing federal statute in communications to the federal agency charged with enforcing that statute.
*434 There is nothing in the texts of the 2003 Letter or the 2008 Email, or in the actions of HUD in investigating the allegations of statutory violations, to suggest that knowledge of the identities of the authors would significantly “shed light on an agency’s performance of its statutory duties or otherwise let citizens know what their government is up to.” Dep’t of Def., 510 U.S. at 497, 114 S.Ct. 1006 (internal quotation marks and alteration omitted). We therefore conclude that no public policy cognizable under Exemption 6 would be served by revealing their identities.
Because the authors of the communications have cognizable personal privacy interests in maintaining their anonymity, and because there is no cognizable public policy interest that would be served by revealing their identities, we hold that revealing their identities “would constitute a clearly unwarranted invasion of personal privacy” under Exemption 6.
3. Exemption 7(D) and Landano
Prudential argues that the foregoing analysis makes Exemption 7 “superfluous,” and undercuts the Supreme Court’s interpretation of Exemption 7(D) in United States Department of Justice v. Landano, 508 U.S. 165, 113 S.Ct. 2014, 124 L.Ed.2d 84 (1993). We disagree.
Exemption 7 applies to “records or information compiled for law enforcement purposes.” 5 U.S.C. § 552(b)(7). Such records are exempt from a FOIA request, but only if they satisfy the criteria of at least one of six subcategories of Exemption 7 — Exemptions 7(A) through 7(F). Exemption 7(D) provides that a law enforcement record need not be released if it “could reasonably be expected to disclose the identity of a confidential source.” Id. § 552(b)(7)(D). In Landano, the Court established the criteria by which a law enforcement “source” can qualify as “confidential” within the meaning of Exemption 7(D). See Landano, 508 U.S. at 179-80, 113 S.Ct. 2014.
Prudential argues, though a little obliquely, that the 2003 Letter and 2008 Email are “records or information compiled for law enforcement purposes” within the meaning of Exemption 7, and that the authors of the 2003 Letter and the 2008 Email do not qualify as “confidential source[s]” under Exemption 7(D). It then argues that if the identities of the authors are protected under Exemption 6, without any requirement that the authors satisfy the criteria for a “confidential source” contained in Exemption 7(D), Exemption 6 offers an end run around the more stringent requirements of Exemption 7. We see no basis to conclude that the application of Exemption 6 in this case undercuts or is inconsistent with Exemption 7.
Exemption 7 operates differently from Exemption 6. Under Exemption 7(D), if an individual satisfies the criteria for a “confidential source,” then the “record[ ] or information compiled for law enforcement purposes” need not be released. § 552(b)(7)(D). If the individual is a “confidential source,” that is the end of the matter; there is no need to balance the individual’s privacy interest against the public interest in disclosure, as is required under Exemption 6. However, if the individual does not satisfy the criteria for a “confidential source,” he or she may nonetheless be protected under some other subcategory of Exemption 7. The subcategory most relevant to our case is Exemption 7(C), which exempts “records or information compiled for law enforcement purposes” if their disclosure “could reasonably be expected to constitute an unwarranted invasion of personal privacy.” Id. § 552(b)(7)(C).
*435 We are willing to assume that the 2003 Letter and 2008 Email are “records or information compiled for law enforcement purposes” within the meaning of Exemption 7. If HUD had characterized them as such and had relied on Exemption 7(C) to exempt them from release, we would balance the authors’ privacy interests against the public interest in disclosure, much as we have just done under Exemption 6. What Prudential fails to recognize is that Exemption 7(C) is more protective of privacy than Exemption 6. As the Supreme Court noted in Reporters Committee, “Exemption 7(C)’s privacy language is broader than the comparable language in Exemption 6 in two respects.” 489 U.S. at 756, 109 S.Ct. 1468. First, Exemption 6 requires that the invasion of privacy be “clearly unwarranted,” whereas Exemption 7(C) requires only that the invasion be “unwarranted.” Second, Exemption 6 requires a disclosure that “would constitute” an invasion of privacy, whereas Exemption 7(C) requires only that a disclosure “could reasonably be expected to constitute” an invasion of privacy. However, because HUD has chosen to rely on Exemption 6 rather than Exemption 7(C), we need not examine whether the 2003 Letter and the 2008 Email would also be protected under Exemption 7(C).
Conclusion
For the foregoing reasons, we conclude that HUD properly withheld the identities of the authors of the 2003 Letter and the 2008 Email. We therefore affirm the district court.
AFFIRMED.