FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MARIA A. POMARES,

       *Plaintiff-Appellant*,

  v.

DEPARTMENT OF VETERANS
AFFAIRS,

       *Defendant-Appellee*.

No. 23-55205

D.C. No.
3:21-cv-00084-H-
MSB

OPINION

Appeal from the United States District Court
for the Southern District of California
Marilyn L. Huff, District Judge, Presiding

Argued and Submitted March 27, 2024
Pasadena, California

Filed August 13, 2024

Before: Susan P. Graber, Sandra S. Ikuta, and Danielle J.
Forrest, Circuit Judges.

Opinion by Judge Forrest

**SUMMARY**[*]

**Freedom of Information Act**

The panel affirmed in part and reversed in part the district court's summary judgment in favor of the Department of Veterans Affairs (VA) in plaintiff's action seeking information from the VA under the Freedom of Information Act (FOIA).

Plaintiff submitted three FOIA requests to the VA concerning potential misconduct within the VA. Specifically, she believed that Charmain Bogue, the director of the Education Service in the Veterans Benefit Administration, had improper ties to a political advocacy organization and that the VA might have leaked nonpublic information. Bogue's husband was the founder and President of Evocati, LLC, a consulting company that provided public relations services to organizations that serve the veterans' community; and was also an advisor to Veterans Education Success (VES), a nonprofit organization that advocated before the Education Service. After plaintiff submitted her FOIA requests, the VA's Office of Inspector General (OIG) found that Bogue had acted improperly.

Plaintiff argued that the VA's manual search for responsive emails in addressing her first FOIA request seeking emails received or sent by several VA officials was inadequate. The panel held that the VA's search process was

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

reasonable and affirmed the district court's judgment as to the adequacy of the search.

Plaintiff next argued that the VA improperly relied on several FOIA exemptions to withhold responsive records in addressing her third FOIA request for records relating to OIG investigations in which Bogue was a subject or a witness. The panel affirmed the district court's judgment that the VA properly relied on FOIA Exemption 4 (commercial or financial and confidential information) in withholding responsive documents that it obtained from Evocati. With respect to the VA's redaction of names and contact information from certain emails under Exemption 6 (personal privacy), the panel affirmed the district court's judgment except as to the names (but not the email addresses) of the VES employees who lobbied Congress or the VA. Finally, with respect to the VA's withholding of interview transcripts from the OIG investigation under Exemption 7(E) (law-enforcement techniques and procedures), the panel held that it could not tell whether the interview techniques and methods used by OIG fell within Exemption 7(E), and therefore reversed the district court's judgment and remanded for further proceedings.

**COUNSEL**

Gary J. Aguirre (argued), Aguirre Law APC, San Diego, California, for Plaintiff-Appellant.

Betsey Boutelle (argued), Assistant United States Attorney; Katherine L. Parker, Assistant United States Attorney, Chief, Civil Division; Tara K. McGrath, United States Attorney; United States Department of Justice, Office of the United States Attorney, San Diego, California; for Defendant-Appellee.

**OPINION**

FORREST, Circuit Judge:

Maria Pomares requested information from the Department of Veterans Affairs (VA) under the Freedom of Information Act (FOIA), 5 U.S.C. § 552. The VA produced many responsive records but withheld others under FOIA's exemptions. Pomares sued the VA under FOIA, and the district court granted summary judgment to the VA. On appeal, Pomares raises two challenges. First, she argues that the VA's manual search for responsive emails was inadequate. Second, she argues that the VA improperly relied on FOIA Exemptions 4 (commercial or financial and confidential information), 6 (personal privacy), and 7(E) (law-enforcement techniques and procedures) to withhold responsive records. We have jurisdiction under 28 U.S.C. § 1291, and we affirm the district court's judgment as to the adequacy of the VA's search, Exemption 4, and partially as relates to Exemption 6, but we reverse and remand as to Exemption 7(E) and partially as to Exemption 6.

## I. BACKGROUND

### A. Pomares's Requests

Pomares sought records to shed light on potential misconduct within the VA. She believed that a VA official had improper ties to a political advocacy organization and that the VA might have leaked nonpublic information. Pomares's first suspicion seems well-founded. Charmain Bogue was the director of the Education Service in the Veterans Benefit Administration. Director Bogue's husband, Barrett Bogue, was the founder and president of Evocati, LLC, a consulting company that provides public relations services to organizations serving the veterans' community. Mr. Bogue was also a part-time senior communications advisor to Veterans Education Success (VES), a nonprofit organization that advocated before the Education Service. After Pomares submitted her FOIA requests, the VA's Office of Inspector General (OIG) found that Director Bogue had acted improperly. Specifically, OIG found that Director Bogue participated in matters involving VES without considering the apparent conflict of interest, solicited professional assistance from VES's president, insufficiently disclosed details about Mr. Bogue's business, and refused to cooperate fully in OIG's investigation.

Pomares also suspected that the VA leaked information to VES before it was public. VES wrote a letter to the Veterans Benefit Administration suggesting that four for-profit schools were ineligible to enroll veterans using federal educational benefits. *See* 38 U.S.C. § 3696. Several weeks later, and before any government announcement, VES tweeted a press release stating that the VA intended to suspend new enrollment at five schools (including three schools that VES mentioned in its letter). Later that day, after

the markets closed, the VA announced its decision. Before either announcement, the stock of the company that owned two of the for-profit schools had already been falling. Pomares inferred that some investors had learned of the decision from the VA before it was announced.

To learn more, Pomares submitted three FOIA requests to the VA. The requests were processed by several officials. On appeal, Pomares challenges the VA's search for emails sought in her first request and the VA's withholding of OIG records that she sought in her third request.

## B. Email Search

Pomares's first request sought emails received or sent by several VA officials, including Margarita Devlin and Director Bogue. The request for Devlin's emails was assigned to Veterans Benefit Administration FOIA Program Specialist Quanisha Jones. Jones asked the Office of Information and Technology, Operations and Services eDiscovery department (ITOPS) to perform an electronic search for Devlin's emails containing terms specified by Pomares. ITOPS identified 155 pages that Jones determined were responsive and that she released after considering FOIA's exemptions. Pomares appealed administratively, and the Office of General Counsel remanded the request for reprocessing. In its second search, using slightly modified search terms as directed on remand, ITOPS produced 731 pages. Following review, Jones determined that only 138 of those pages were responsive and that some should be withheld under FOIA exemptions.

The request for Director Bogue's emails was first assigned to Veterans Benefit Administration FOIA analyst Stephanie Tucker. Tucker told Pomares that 463 pages of emails were found, but some were not responsive, and many

redactions were made for personal privacy under Exemption 6. Tucker later resigned from her position, and no declaration or *Vaughn* Index was created for her search.[1] The Office of General Counsel directed Jones to reprocess Pomares's request for Director Bogue's emails. As with the Devlin emails, Jones requested ITOPS to perform a search based on the terms in the FOIA request. ITOPS produced 8,049 potentially responsive pages. For more than a month, Jones reviewed the documents "page-by-page and line-by-line." Ultimately, Jones determined that 166 pages were responsive, and she released them after applying FOIA's exemptions.

## C. Inspector General's Records

Pomares's third request sought all records relating to OIG investigations concerning the handling of material, nonpublic information or investigations in which Director Bogue was a subject or witness. OIG Supervisory Government Information Specialist Ruthlee Gowins-Bellamy processed the request. VES and Evocati reviewed records that they had submitted to OIG under subpoena, and both requested exemptions under Exemption 4 for commercial, confidential records. These records were withheld almost entirely, and several names were redacted from emails under Exemption 6 to protect individuals' privacy. Finally, the VA withheld 2,164 pages of interview transcripts in their entirety under Exemptions 6, 7(C), and

---

[1] A *Vaughn* Index is a document that a government agency supplies to opposing parties and the court that identifies the documents withheld, the statutory exemptions claimed, and particularized explanations of how disclosure of a particular document would damage the interest protected by the claimed FOIA exemption. *Hamdan v. U.S. Dep't of Just.*, 797 F.3d 759, 769 n.4 (9th Cir. 2015).

7(E) to protect witnesses' privacy and shield confidential interview methods.

## D. District Court Proceedings

Pomares sued the VA under FOIA, seeking declaratory relief, an injunction compelling production of responsive records, and attorneys' fees and costs. Pomares and the VA each moved for summary judgment, and the district court granted the VA's motion. The court concluded that FOIA authorizes manual or electronic searches, so the VA's search process was lawful and otherwise reasonable. The district court also determined that the VA properly justified withholdings under Exemptions 4, 5, 6, and 7. The *Vaughn* Indices were necessarily adequate, the court reasoned, because they included sufficient detail to justify the withholdings. The district court considered thousands of pages across more than ten separate FOIA searches. The scope of our review in this appeal is narrower: we consider the adequacy of the VA's search for two officials' emails and the applicability of Exemption 4 to records submitted by Evocati; Exemption 6 to emails from VES, Evocati, and the Inspector General; and Exemption 7(E) to transcripts from OIG interviews.

## II. DISCUSSION

We review the district court's summary judgment decision de novo. *Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987, 990 (9th Cir. 2016) (en banc) (per curiam).

## A. Adequacy of the VA's Search

Upon request, a federal agency "shall make . . . records promptly available." 5 U.S.C. § 552(a)(3)(A). To determine whether an agency has fulfilled its duty, rather than

rummaging through government files, we analyze whether the agency performed an adequate search. *See Transgender L. Ctr. v. Immigr. & Customs Enf't*, 46 F.4th 771, 779 (9th Cir. 2022). An adequate search is one that is "reasonably calculated to uncover all relevant documents." *Id.* (quoting *Hamdan*, 797 F.3d at 770). And it is the agency's burden to prove "beyond material doubt" that it has taken "all reasonable measures to uncover all relevant documents." *Id.* at 779–80. We consider not whether the agency produced every responsive document but rather whether its search was reasonable. *Hamdan*, 797 F.3d at 770–71; *accord Trentadue v. Fed. Bureau of Investigation*, 572 F.3d 794, 797 (10th Cir. 2009) ("[T]he focal point of the judicial inquiry is the agency's search process, not the outcome of its search.").

In 1996, Congress amended FOIA to require agencies to "make reasonable efforts to search for . . . records in electronic form or format," unless doing so would "significantly interfere" with the agency's information systems. Electronic FOIA Amendments of 1996, Pub. L. No. 104-231, § 5, 110 Stat. 3048, 3050 (codified at 5 U.S.C. § 552(a)(3)(C)). "'[S]earch' means to review, manually or by automated means, agency records" to determine responsiveness. 5 U.S.C. § 552(a)(3)(D). Pomares reads § 552(a)(3)(C) as requiring not only that electronic records be searched but also that records must be searched electronically so long as that method would not significantly interfere with the agency's information systems. Under that reading, Pomares argues, Jones violated FOIA by manually reviewing each email identified by ITOPS. In Pomares's view, Jones simply should have produced the documents that ITOPS located in its search. Pomares's reading contradicts the text—FOIA does not prohibit manual review of electronic files.

Throughout § 552, "form or format" refers to the medium in which records are kept, not the search method used to locate or produce those records. Certain records must be published for public inspection in electronic format, "regardless of [the records'] form or format." *Id.* § 552(a)(2)(D). "[A]n agency shall provide the record in any form or format requested . . . ." *Id.* § 552(a)(3)(B). And FOIA defines "record" to cover "any format, including an electronic format." *Id.* § 552(f)(2)(A). Congress added these three provisions when it added subparagraph (a)(3)(C), and we presume that Congress used "form or format" consistently. Electronic FOIA Amendments § 5; *see HollyFrontier Cheyenne Refin., LLC v. Renewable Fuels Ass'n*, 594 U.S. 382, 389 (2021) ("[A]bsent contrary evidence, this Court normally presumes consistent usage."); *see also* Antonin Scalia & Bryan Garner, *Reading Law* 171–73 (1st ed. 2012) (the presumption of consistent usage is strongest for terms in the same section or enacted at the same time).

And so construed, subparagraph (a)(3)(C) requires agencies to search for records stored in an electronic medium; it does not dictate a specific search method. Indeed, Congress expressly authorized manual review of electronic records to determine responsiveness. Subparagraph (a)(3)(D) defines "search" "[f]or purposes of [§ 552(a)(3)]." 5 U.S.C. § 552(a)(3)(D). Within this paragraph, "search" appears once: in subparagraph (a)(3)(C). If the definition of "search" in subparagraph (a)(3)(D), which contemplates manual review of records, does not define "search" as used in subparagraph (a)(3)(C), then it serves no function. We do not read the definition to be meaningless surplusage. *See, e.g.*, *United States v. Barraza-Lopez*, 659 F.3d 1216, 1220 (9th Cir. 2011) (applying the canon against surplusage).

Separate from the textual analysis, Pomares argues that requiring an exclusively electronic search method in this case better serves FOIA's policy and the VA's FOIA regulations. When Congress added subparagraphs (a)(3)(C) and (a)(3)(D), Pomares reasons, it sought to streamline the FOIA process, and manual review hinders that goal. *See TPS, Inc. v. U.S. Dep't of Def.*, 330 F.3d 1191, 1195–96 (9th Cir. 2003) (recognizing Congress's intent "to encourage government agencies to use advancing computer technology . . . to enhance public access to records" (internal quotation marks omitted)); 38 C.F.R. § 1.561(b)(9) (searches shall be conducted "in the most efficient and least expensive manner reasonably possible"). But this argument fails for two reasons. First, the statute's text, not congressional intent, governs. *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 144 S. Ct. 2440, 2454 (2024). Second, Pomares's premise is flawed: Jones would have manually reviewed the records that ITOPS located to apply FOIA's exemptions even if she did not also consider responsiveness. *See* 5 U.S.C. § 552(b).

Although FOIA's provisions do not require electronic searches in all cases, its reasonableness requirement surely dictates at least some degree of electronic searching in some cases. For example, an agency could not reasonably search for emails by looking only in desk drawers. As with all FOIA searches, courts must make a fact-specific determination regarding the adequacy of the agency's search. *See, e.g.*, *Inter-Coop. Exch. v. U.S. Dep't of Com.*, 36 F.4th 905, 912 n.3 (9th Cir. 2022) ("The government's response to a FOIA request is context specific . . . ."); *see also Rubman v. U.S. Citizenship & Immigr. Servs.*, 800 F.3d 381, 387 (7th Cir. 2015) ("Reasonableness is a flexible and context-dependent standard.").

The VA's search process here was reasonable. Jones's method of requesting an initial electronic search and then manually reviewing the results of that search to determine responsiveness and application of FOIA's exemptions was reasonably calculated to uncover all relevant documents. She explained that the ITOPS software could not exclude internal emails or "analyze the page content," which necessitated manual review. Other FOIA analysts processing other aspects of Pomares's requests followed a similar process. For example, RuthAnn Parise used a different software but also noted that many emails identified in the electronic review were nonresponsive, such as internal communications or marketing emails. And, like Jones, Michelle Jackson reviewed 1,509 pages provided by ITOPS and determined that only 11 were responsive. The record does not show any requests that ITOPS exclude internal emails, which suggests that ITOPS lacked that capacity. And we may rely on Jones's declarations because they are reasonably detailed and nonconclusory, and Pomares has not introduced evidence to overcome the presumption of good faith. *Transgender L. Ctr.*, 46 F.4th at 780.

Pomares may have preferred a different search method, but her objections do not undermine the adequacy of the VA's search. We affirm the district court's judgment as to the adequacy of the search for Devlin's and Director Bogue's emails.

## B. Exemptions

FOIA requires an agency to provide requested records unless they fall within one of nine exclusive statutory exemptions. *Milner v. Dep't of the Navy*, 562 U.S. 562, 565 (2011); *see* 5 U.S.C. § 552(b)(1)–(9). Mindful of FOIA's general command to provide "broad disclosure," we

interpret its exemptions narrowly, *U.S. Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 151 (1989), and the agency has the burden of showing that a claimed exemption applies, *Rojas v. Fed. Aviation Admin.*, 941 F.3d 392, 397 (9th Cir. 2019). But FOIA lawsuits inherently generate obstacles for challenging and reviewing agency withholdings because only the agency has seen the documents at issue. *See Wiener v. Fed. Bureau of Investigation*, 943 F.2d 972, 977–78 (9th Cir. 1991).

To facilitate challenge and review, an agency must prepare a *Vaughn* Index detailing its withholdings and related justifications. *Id.*; *see generally Vaughn v. Rosen*, 484 F.2d 820, 826–28 (D.C. Cir. 1973). An adequate *Vaughn* Index must: (1) identify each document withheld; (2) state the applicable statutory exemption; and (3) explain how disclosure would harm the interests protected by the statutory exemption. *Hamdan*, 797 F.3d at 769 n.4. An agency must provide more than "boilerplate or conclusory statements," *Transgender L. Ctr.*, 46 F.4th at 781 (quoting *Shannahan v. IRS*, 672 F.3d 1142, 1148 (9th Cir. 2012)), and allow "a meaningful opportunity to contest, and . . . an adequate foundation to review," the agency's withholdings, *Citizens Comm'n on Hum. Rts. v. Food & Drug Admin.*, 45 F.3d 1325, 1328 (9th Cir. 1995) (quoting *Wiener*, 943 F.2d at 977).

We address each of the challenged exemptions and the sufficiency of the VA's justifications for its withholdings, considering its *Vaughn* Index and other supporting documents.

### 1. Exemption 4

The VA withheld documents responsive to Pomares's requests that it obtained from Evocati under Exception 4.

FOIA exempts from disclosure "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). Thus, to satisfy Exemption 4, an agency must show that the information is (1) commercial or financial, (2) obtained from a person, and (3) privileged or confidential. *Id.* Evocati is a "person" under Exemption 4. *See* 5 U.S.C. § 551(2); *Fed. Commc'ns Comm'n v. AT&T Inc.*, 562 U.S. 397, 408–09 (2011). The issues, then, are whether the VA established that Evocati's records were both (a) commercial or financial and (b) privileged or confidential.

We give "commercial" and "financial" their ordinary meanings. *Watkins v. U.S. Bureau of Customs & Border Prot.*, 643 F.3d 1189, 1194 (9th Cir. 2011). Information is "commercial" if it pertains to "business [or] trade," or is designed to be profitable. *Commerce*, *Commercial*, *American Heritage Dictionary of the English Language* 267 (1969); *see also Commercial*, *Webster's Third New International Dictionary* 456 (1963) (defining commercial as "from the point of view of profit"). Other courts have read the term similarly. *See, e.g.*, *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*, 58 F.4th 1255, 1265 (D.C. Cir. 2023) ("We have read Exemption 4 to cover only information that, in and of itself, demonstrably pertains to the exchange of goods or services or the making of a profit."). Information is "financial" if it relates to "the management of money and other assets." *Finance*, *Financial*, *American Heritage Dictionary of the English Language* 492 (1969). And information is "confidential" if it is "customarily kept private, or at least closely held, by the

person imparting it." *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 434 (2019).[2]

Viewed together, the Gowins-Bellamy Declaration, the *Vaughn* Index, and the letter from Evocati's attorney incorporated in the *Vaughn* Index (later submitted as a declaration by Mr. Bogue) sufficiently detail the records that the VA withheld and the justification for the withholdings. The *Vaughn* Index incorporated materials that Evocati sent to OIG requesting withholdings under Exemption 4. The letter from Evocati's attorney and its attached index described records that were commercial (including consulting agreements and business emails with confidential information) or financial (including private financial information shared between the Bogues and their accountants). And Mr. Bogue declared that the information was "closely held by Evocati" and neither "publicly available nor freely shared." The district court viewed the documents together and concluded that the VA satisfied its burden. Pomares disagrees for two reasons.

First, Pomares argues that the VA did not satisfy its burden to show that Exemption 4 applied because the *Vaughn* Index simply incorporated the letter from Evocati.

---

[2] In *Food Marketing Institute*, the Supreme Court noted that information might be considered confidential only if the party receiving the information assured confidentiality. 588 U.S. at 434–35. But the Court declined to decide whether such assurances are necessary. *Id.* at 435. We need not answer that question. In his declaration, Mr. Bogue noted that the documents Evocati provided to OIG under a subpoena "were prominently labeled 'Confidential' and were produced by Evocati, LLC with the implied understanding that the OIG would treat the documents as confidential." Pomares has not argued that assurances of confidentiality are required or that OIG's implied assurances were insufficient.

But Exemption 4, by its nature, requires agencies to rely on assertions by the third parties that provided the information sought in a FOIA request. Agencies cannot determine, on their own, whether a person who provided information to the government treated that information as confidential. Given the practicalities at play in this context, courts routinely consider information from third parties on which an agency relied to assert Exemption 4. *See, e.g.*, *Citizens Comm'n on Hum. Rts.*, 45 F.3d at 1328 (although a company participated in preparing the *Vaughn* Index, "the FDA was ultimately responsible for the decision to withhold these documents"); *Greenberg v. Food & Drug Admin.*, 803 F.2d 1213, 1216–17 (D.C. Cir. 1986) (relying on affidavits submitted by the company that provided commercial information). The VA had to rely on Evocati's assertions to determine whether Exemption 4 applied. Nothing in FOIA required the VA to copy-and-paste Evocati's representations into a *Vaughn* Index rather than attaching and incorporating them by reference.

Second, Pomares argues that no admissible evidence supports the VA's withholding. After Pomares noted that the letter from Evocati's counsel to OIG was an inadmissible unsworn statement, the VA refiled the identical letter with Mr. Bogue's attestation that the letter was "true and correct to the best of [his] knowledge." Pomares contends that this declaration was insufficient because Mr. Bogue did not establish his personal knowledge and competency to testify to the contents of the letter. Though its introduction was perhaps inartful, the district court properly considered Mr. Bogue's declaration. He signed the declaration as Evocati's president, and we have recognized that similar witnesses were competent to testify by virtue of their positions. *See Stuart v. UNUM Life Ins. Co. of Am.*, 217 F.3d

1145, 1155 (9th Cir. 2000) (a hospital executive had personal knowledge to testify regarding contributions to employee insurance plans); *United States v. Thompson*, 559 F.2d 552, 553–54 (9th Cir. 1977) (per curiam) (a restaurant's manager had personal knowledge of the restaurant's normal operations). Pomares's arguments do not support a different result here.

We affirm the district court's judgment as to Exemption 4.

## 2. Exemption 6

The VA redacted names and contact information from emails it produced that were subpoenaed from VES and Evocati and from emails that were sent by and to the Inspector General.[3] Agencies may withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). If the information withheld by the agency is the type of file covered by this exemption, we engage in a two-step, burden-shifting analysis. *See Rojas*, 941 F.3d at 404–05. First, the agency must show that there is a nontrivial privacy interest against disclosure. *Id.* at 405. Second, if the agency makes that showing, the requester must show that the public interest in disclosure outweighs

---

[3] Pomares also argues that withholdings from Tucker's initial search for Director Bogue's emails were improper because Tucker never filed a declaration or *Vaughn* Index. Viewed in isolation, we might agree. But the VA directed Jones to repeat the search for Director Bogue's emails. And as we explained, that search was adequate, and Pomares has not challenged Jones's application of the exemptions. Whatever infirmity that existed in Tucker's search was remedied by Jones's subsequent search that complied with FOIA. Pomares was "entitled to a reasonable search" for Director Bogue's emails, *Hamdan*, 797 F.3d at 772, which Jones provided.

the asserted privacy interest. *Id.*; *see also Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 973 (9th Cir. 2009) (reasoning that FOIA requires balancing because the exemption applies to "unwarranted" invasions of privacy).

To overcome a privacy interest, a requester must demonstrate a "significant" public interest in disclosure. *Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 172–73 (2004) (applying the related Exemption 7(C)). The public interest must concern government operation and activity, and the requester's individual intentions are irrelevant because released records may be shared with anyone. *Forest Serv. Emps. for Env't Ethics v. U.S. Forest Serv.*, 524 F.3d 1021, 1024–25 (9th Cir. 2008). When the requester asserts a public interest in learning about official misconduct, she must provide evidence that would allow a reasonable person to conclude that the misconduct "might have occurred." *Favish*, 541 U.S. at 174. And the requester must show "some nexus" between the requested information and "unveiling agency misconduct." *Lahr*, 569 F.3d at 978.

Pomares does not dispute that the redacted information qualifies as a "similar file" covered by Exemption 6. *See Forest Serv. Emps.*, 524 F.3d at 1024 (names and identifying information satisfied the "similar file" requirement). We consider, then, whether the VA established a nontrivial privacy interest in the redacted names and whether the district court properly balanced the public interest in disclosure against the asserted privacy interest.

Pomares argues that the VA failed to establish a nontrivial privacy interest in the redacted names. Reviewing far more withheld documents than are at issue here, the district court concluded that the name or contact information "of a lower-level employee" would not shed light on the

VA's performance, so the privacy interest outweighed the public interest in disclosure. For many withholdings that Pomares has not challenged, the VA provided the title and position of the employees whose names it withheld, and its briefing cites the declarations and *Vaughn* Indices that include those details. But the VA did not provide that same information for the withholdings that we consider.

The Gowins-Bellamy Declaration does not address how Exemption 6 applies to the VES and Evocati records or OIG emails. And the *Vaughn* Index provides no further detail, stating only that the VA redacted "[p]ersonally identifying information regarding VA employees and third parties consisting of names, email addresses and phone numbers." But with one exception, the *Vaughn* Index does not state the role or level of the employees whose names were withheld from these records. This hinders our ability to weigh the public and privacy interests. We have previously emphasized the importance of "the employee's position in her employer's hierarchical structure" to this analysis. *Id.* at 1025.

But the standard for recognizing a nontrivial privacy interest is not demanding. An agency must show that the disclosure would affect employees' "control of information concerning [their] person[s]" or expose them to harassment. *Rojas*, 941 F.3d at 405 (quoting *U.S. Dep't of Just. v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 763 (1989)). The VA employees have a nontrivial privacy interest in their personal identities, even though we cannot fully evaluate the strength of that interest. And the VES employees have a greater privacy interest because they are private individuals whose identities are less closely connected to government functioning, which is the public interest recognized by FOIA. *See Fed. Lab. Rels. Auth. v. U.S. Dep't of Treasury*,

884 F.2d 1446, 1451 (D.C. Cir. 1989); *accord Common Cause v. Nuclear Regul. Comm'n*, 674 F.2d 921, 938 (D.C Cir. 1982) ("[Exemption 6] provides greater protection to private individuals . . . .").

To overcome the nontrivial privacy interests that exist, Pomares must show a stronger public interest in disclosure. She argues that the OIG report concerning Director Bogue shows that misconduct occurred, and the names of VA and VES employees corresponding with one another would shed further light on that misconduct. But Pomares has not identified a nexus between the employees' names and any misconduct by the Bogues. And the public OIG report weakens the public interest in disclosure because the misconduct has already been publicized. *See Forest Serv. Emps.*, 524 F.3d at 1028. Pomares suggests that revealing the names might reveal the source of the suspected leak to VES of the VA's decision to suspend enrollment at five for-profit schools. But none of the emails that Pomares cites establishes that connection. Put differently, revealing the names of individuals who have not been shown to have a connection to the suspected leak does not help Pomares determine whether information was leaked or, if so, who might have done it.

Our balancing comes out differently for the VES employees who lobbied Congress or the VA. The VA redacted the names of VES employees who emailed congressional aides recommending Director Bogue and others for presidential appointments. It also redacted the names and email addresses of VES employees who emailed VA employees. Finally, it redacted the name of a VES employee who testified before a congressional committee, which was included in an email from a VES employee to Director Bogue.

We have recognized that the public has a "'robust interest' in knowing who is 'seeking to influence' an agency." *Rojas*, 941 F.3d at 406 (citation omitted); *accord Elec. Frontier Found. v. Off. of the Dir. of Nat'l Intel.*, 639 F.3d 876, 886 (9th Cir. 2010) ("[C]ases considering a private party attempting to influence government policy typically find in favor of disclosure . . . ."), *abrogated on other grounds*, *Animal Legal Def. Fund*, 836 F.3d at 990. We do not evaluate the public interest from the vantage of the person making the FOIA request. *See Forest Serv. Emps.*, 524 F.3d at 1025. Rather, we consider the general public interest in "understanding . . . the operations or activities of the government," *id.* (quoting *U.S. Dep't of Def. v. Fed. Lab. Rels. Auth.*, 510 U.S. 487, 495 (1994)), and that interest includes knowing the identities of private parties attempting to influence government policy, *Elec. Frontier Found.*, 639 F.3d at 886. There is a strong public interest in disclosing the names of lobbyists because that may "shed light on which companies and which individuals influence government decision making." *Id.* at 888. On the other hand, "email addresses may add to the risk of privacy invasion with little additional benefit to the public interest." *Id.* Therefore, in balancing the public interest against the privacy interests of the VES lobbyists, we conclude that disclosure of the names of the VES employees who lobbied the VA or congressional aides or who testified before a congressional committee do not constitute "a clearly unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(6). However, there is little public interest in disclosure of the VES employees' email addresses.

Accordingly, with regard to Pomares's challenge to withholdings made under Exemption 6, we affirm the district court except as relates to the names (but not the email

addresses) of the VES employees who lobbied Congress or the VA.

### 3. Exemption 7(E)

The VA withheld interview transcripts from the OIG investigation that were responsive to Pomares's requests under Exemption 7(E). Agencies may withhold "records or information compiled for law enforcement purposes" to the extent that production "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). Pomares does not dispute that the records gathered by OIG for its internal investigation were gathered for a law-enforcement purpose. *See Stern v. Fed. Bureau of Investigation*, 737 F.2d 84, 89 (D.C. Cir. 1984) ("[A]n agency's investigation of its own employees is for 'law enforcement purposes' only if it focuses 'directly on specifically alleged illegal acts . . . which could, if proved, result in civil or criminal sanctions.'" (citation omitted)). And because the VA's interview methods are "techniques and procedures," rather than "guidelines," it need not show any danger of future lawbreaking resulting from disclosure. *Hamdan*, 797 F.3d at 778 (citation omitted); *see also Transgender L. Ctr.*, 46 F.4th at 784–85 (defining techniques and procedures).

But not all techniques and procedures are shielded by Exemption 7(E). The government must show that the technique or procedure is "not generally known to the public." *Rosenfeld v. U.S. Dep't of Just.*, 57 F.3d 803, 815 (9th Cir. 1995). Four of our cases have addressed whether an agency made this showing. First, we held that an agency met

its burden where an affidavit in support of a 7(E) withholding explained why disclosure of documents related to investigating the poisoning of consumer products would seriously threaten future law-enforcement "investigations by revealing specifics of cyanide-tracing techniques." *Bowen v. U.S. Food & Drug Admin.*, 925 F.2d 1225, 1229 (9th Cir. 1991). The tracing techniques at issue were not publicly known or disclosed. *Id.* at 1228. Put differently, although the general "chemical process of tracing" was generally known, the specific, technical procedures were not. *Id.*

Next, we rejected an agency's attempt to withhold records showing that it used pretextual phone calls in an investigation. *Rosenfeld*, 57 F.3d at 815. We reasoned that Exemption 7(E) does not cover investigative techniques that are generally known, and a pretextual phone call "would leap to the mind of the most simpleminded investigator." *Id.* We dismissed the government's argument that the use of a particular alias transformed the generally known pretextual call into an unknown technique. *Id.* Reframing a generally known practice as a novel "application of the practice to the particular facts" does not bring the practice (and the documents that would reveal its use) within Exemption 7(E)'s ambit. *Id.*

Our third case explained that although Exemption 7(E) does not protect the application of a well-known technique, it does shield the means of investigation if those means are not generally known. *Hamdan*, 797 F.3d at 777–78. In *Hamdan*, the agency properly invoked Exemption 7(E) because its affidavits stated that the records sought would have revealed "techniques and procedures related to surveillance and credit searches" and "a stratagem, the details of which if revealed would preclude its use in future cases." *Id.* at 777. Even though surveillance and credit

searches are generally known investigative techniques, the requested records concerned an unknown way of deploying those techniques that disclosure would frustrate, which was sufficient to invoke Exception 7(E). *Id.* at 777–78.

Most recently, we held that narrative sections of an internal manual for federal prosecutors could not be withheld under Exemption 7(E). *Am. Civ. Liberties Union of N. Cal. v. U.S. Dep't of Just.*, 880 F.3d 473, 492 (9th Cir. 2018). The records described in general terms "publicly known investigative techniques" for obtaining a suspect's location information, as well as the legal authorizations to obtain that information and legal arguments to obtain those authorizations. *Id.* The records lacked "detailed, technical analysis" and did not contain "non-public details" about the surveillance techniques. *Id.* (citation omitted). Thus, the records did not reveal means of conducting an investigation that were not generally known, and the records were not shielded by Exemption 7(E). *Id.*

Pomares argues that the Gowins-Bellamy Declaration and *Vaughn* Index are inadequate to justify the VA's Exemption 7(E) withholdings. We agree. The Declaration never mentions Exemption 7(E), and the *Vaughn* Index excludes all interview transcripts in their entirety with a single entry stating that the transcripts "contain specific information about how VA OIG conducts official investigations, including sequence and manner of questioning, and specific interview methods which are confidential."[4]

---

[4] Pomares also argues that Gowins-Bellamy was not competent to testify about OIG's interview techniques. But we generally recognize that an

Although interviewing witnesses and subjects is a generally known investigative practice, in some cases the specific means for conducting the interview may be protected by Exemption 7(E). *See, e.g.*, *Knight First Amend. Inst. at Columbia Univ. v. U.S. Citizenship & Immigr. Servs.*, 30 F.4th 318, 325, 331–33 (2d Cir. 2022). But here the VA's *Vaughn* Index does not suggest any means of interviewing that are not publicly known—every interview involves a "sequence and manner of questioning" and "interview methods." And although confidential interview methods might resemble the "stratagem" that we found sufficient in *Hamdan*, unlike the agency in that case, here the VA never presented any evidence that disclosure would hinder future investigations (a strong signal that the technique is not publicly known). *See* 797 F.3d at 777–78 ("We conclude that the affidavits, which state that further detail would compromise the very techniques the government is trying to keep secret, are sufficient . . . ."); *see also Bowen*, 925 F.2d at 1229 (referring to the "detailed assertions" in an agency affidavit that disclosure would hinder future investigations).

The inadequacy of the VA's explanation becomes even clearer when compared to the scope of its withholding. In other cases, the government's Exemption 7(E) withholdings were relatively limited. In *Knight*, for example, the agency withheld questions designed to identify potential immigrants' terrorism connections but otherwise released the training materials that contained those questions. 30 F.4th at 325; *see also Hamdan*, 797 F.3d at 777 (the agency

---

affidavit from an official supervising a FOIA search satisfies the personal knowledge requirement of Federal Rule of Civil Procedure 56(c)(4), and Pomares has not given any reason to treat this case as an exception. *See Lahr*, 569 F.3d at 990.

withheld five documents entirely, and ten documents in part). Here, the VA withheld more than 2,000 pages of OIG interview transcripts in their entirety because they would reveal question sequencing. But that explanation would allow the government to "withhold information under Exemption 7(E) under any circumstances, no matter how obvious the investigative practice at issue, simply by saying" that the records reveal a sequence of questions. *Rosenfeld*, 57 F.3d at 815.

Based on the record presented, we cannot tell whether the interview techniques and methods used by OIG fall within Exemption 7(E). Accordingly, we reverse the district court's judgment as to the withholdings under Exemption 7(E) and remand for further proceedings.[5] On remand, if the VA provides a revised *Vaughn* Index, the district court should consider whether any portions of the transcripts could be segregated and provided to Pomares. *See Hamdan*, 797 F.3d at 779 ("It is reversible error for the district court to simply approve the withholding of an entire document without entering a finding on segregability." (cleaned up) (quoting *Wiener*, 943 F.2d at 988)); *see also* 5 U.S.C. § 552(b) ("Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt . . . .").

### III.   CONCLUSION

The VA conducted an adequate search for Devlin's and Director Bogue's emails, and it met its burden for

---

[5] The *Vaughn* Index also cited Exemptions 6 and 7(C) to justify withholding the transcripts in their entirety to protect witnesses' and subjects' identities. On appeal, the VA argues only that Exemption 7(E) justifies the withholding. Thus, we do not consider Exemptions 6 and 7(C).

withholding confidential documents received from Evocati under FOIA Exemption 4 and the names of government and private employees under Exemption 6. However, the VA did not adequately justify withholding the names of VES employees who lobbied Congress or the VA under Exemption 6 or OIG interview transcripts under Exemption 7(E).

**AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings consistent with this opinion.**[6]

---

[6] Each party shall bear its own costs on appeal. Fed. R. App. P. 39(a)(4).